KUSKIN, J.T.C.
In this local property tax appeal, filed directly with the Tax Court pursuant to N.J.S.A. 54:3-21, defendant moves to dismiss plaintiffs complaint by reason of plaintiffs failure to furnish income information in accordance with the requirements of N.J.S.A. 54:4-34 (amended by L.1979, c. 91 and thus commonly referred to as “Chapter 91”). Plaintiff contests the motion on the grounds that (i) the required information was furnished to the assessor after the statutory time limit but in time to be used in the assessing process, (ii) the information provided was in fact used in setting the assessments on plaintiffs property and, therefore, (iii) *458 the “good cause” provision of N.J.S.A. 54:4-34 warrants denial of defendant’s motion.
The statute provides:
Every owner of real property of the taxing district shall, on written request of the assessor, made by certified mail, render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, and produce his title papers, and he may be examined on oath by the assessor, and if he shall fail or refuse to respond to the written request of the assessor within forty-five days of such request, or to testify on oath when required, or shall render a false or fraudulent account, the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall be heard from the assessor’s valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within forty-five days of such request or testify on oath when required, or shall have rendered a false or fraudulent account. The county board of taxation may impose such terms and conditions for furnishing the requested information where it appears that the owner, for good cause shown, could not furnish the information within the required period of time. In making such written request for information pursuant to this section the assessor shall enclose therewith a copy of this section.
[N.J.S.A 54:4-34]
The parties have stipulated that: the subject property, comprising two tax lots, is income-producing within the meaning of Chapter 91; the assessor’s request, seeking information to be used in connection with the 1995 revaluation assessments on the property, was timely served by certified mail on August 5, 1994 (so that the statutory forty-five day period to respond to the request expired on September 19, 1994); the mailing included a copy of N.J.S.A. 54:4-34; and the company performing the revaluation acted as agent for the assessor in responding to questions relating to the request and in receiving and processing information furnished in response to the request.
Based upon the Certifications submitted by the parties and the testimony presented at an evidentiary hearing, I find the following facts:
The assessor’s August 5, 1994 mailing to plaintiff contained three documents. One was a letter of transmittal which advised the taxpayer that it was “requested to submit the appropriate income and expense data requested on the attached forms for the *459 year ended December 31, 1993____” and stated that the information would be considered “in determining the assessment for the property for the 1995 tax year.” The letter further stated: “If you have any questions with respect to completing the enclosed form, please call [the revaluation company] at [the revaluation company’s telephone number].”
In addition to this transmittal letter, the mailing included two forms, one containing a format for reporting of items of income and expense and a second entitled “Lease Information-Class 4A and 4B.” This second form requested the following information: a listing of each tenant space in the taxpayer’s property; the nature of each tenant’s use; whether each space was occupied or vacant; the area of each space; the rent per square foot for each tenant; the date of commencement and expiration of each lease; rent escalations for each tenant; and the payments by each tenant for real estate taxes, utilities and maintenance.
Plaintiff received the assessor’s mailing on August 10, 1994. Plaintiff had available all information necessary to provide a “full and true” account of the income from its property as contemplated by Chapter 91 and as required by the forms. By August 31,1994, plaintiffs controller completed or substantially completed the forms with income and expense information for the fiscal year ending September 30, 1993 and information as to current leases. He then submitted the documents to the president of plaintiff, Henry J. Glanternik, for review. Mr. Glanternik instructed the controller not to return the forms to the assessor because he had questions as to how the forms should be completed and was concerned that information he desired to provide would not fit on the forms or was not requested by the forms. These questions related to the calendar or fiscal year for which information was required, the date as of which the property was being valued and how to provide information with respect to leases with phased-in rents and free rent periods. Mr. Glanternik also wanted the revaluation company to consider information as to environmental clean-up costs and his views on the price at which the property could be sold.
*460 Mr. Glanternik attempted to communicate his questions and concerns to the revaluation company commencing at the end of August, 1994 and continuing through September, 1994. His efforts consisted of five telephone calls, two of which were placed in August and three of which were placed in September. Although none of these telephone calls were returned, Mr. Glanternik was advised by a secretary or receptionist that the principal of the revaluation company would contact him and make arrangements to inspect the property. No other efforts were made by plaintiff to communicate with the revaluation company until late October or November, 1994 when plaintiffs controller also attempted to reach the principal of the revaluation company by telephone.
In late November or early December, 1994, the principal of the revaluation company spoke with Mr. Glanternik and advised him that, in order to assess the subject property accurately, the revaluation company needed to inspect the property and obtain income and expense information. In this conversation, the principal of the revaluation company made some reference to an “extension of time,” but this reference did not relate specifically to the time for answering the Chapter 91 request.
Pursuant to this telephone call or a later call, on December 19, 1994 the principal of the revaluation company and the assessor inspected the property and met with plaintiffs controller who made available copies of the leases for the premises. During the inspection, or within a few days thereafter, the controller provided to the revaluation company information as to the area of each tenant space, term of each lease then in effect, the monthly rent and percentage share of expenses payable by each tenant, descriptions or specifications (but not costs) for tenant improvement work performed or to be performed for some of the tenants and information as to .renewal options and renewal rent for each tenant. The controller also provided cash flow projections for the year ending September 30, 1995. No information was furnished as to actual operating expenses incurred by the landlord for the fiscal year ending September 30, 1993 or September 30,1994, and only very limited information was furnished as to the monetary *461 amounts of tenant contributions to operating expenses and real estate taxes.
In setting the 1995 assessments on the subject property, the principal of the revaluation company utilized the information provided by plaintiff as to the area of each tenant space and as to the rent paid by each of the tenants. On December 27, 1994, after inspection of the property and receipt of information from plaintiff, the revaluation company sent letters to plaintiff stating that the aggregate revaluation assessment on plaintiffs two tax lots would be $27,394,600. Similar letters sent on December 8, 1994 had stated the aggregate assessment to be $14,023,600. The 1995 assessments on the two lots are as set forth in the December 27, 1994 letters.
Plaintiff contends that the questions and concerns articulated by Mr. Glanternik, the failure of the revaluation company to return any of his five telephone calls, the extension of time allegedly granted by the principal of the revaluation company and the fact that plaintiff provided information responsive to the Chapter 91 request which was actually used to determine plaintiffs 1995 assessments constitute, in their totality, “good cause” for extending the forty-five day period in N.J.S.A. 54:4-34 until December, 1994 when the information was delivered to the revaluation company-
The “good cause” provision in N.J.S.A. 54:4-34 is the following:
The county board of taxation [1] may impose such terms and conditions for furnishing the requested information where it appears that the owner, for good cause shown, could not furnish the information within the required period of time.
This provision was considered by the Supreme Court in Ocean Pines, Ltd. v. Point Pleasant Bor., 112 N.J. 1, 547 A.2d 691 (1988), by the Appellate Division in Tower Ctr. Assocs. v. East Brunswick *462 Tp., 286 N.J.Super. 433, 669 A.2d 829 (App.Div.1996) and by the Tax Court in Terrace View Gardens v. Dover Tp., 5 N.J.Tax 469 (Tax 1982), aff'd o.b., 5 N.J.Tax 475 (App.Div.1983), certif. denied, 94 N.J. 559, 468 A.2d 205 (1983). These decisions, when read together, clarify the prerequisites for a taxpayer to succeed on a claim of “good cause.”
In Ocean Pines the Supreme Court sustained a dismissal under Chapter 91 where the taxpayer provided no response to an assessor’s request and claimed “good cause” based on the unavailability of the information necessary to answer the request.
It is apparent from the record that plaintiff made no attempt within the forty-five day period to explain to the assessor why it could not comply with the request. Instead, plaintiff simply chose to ignore the notice____ Under the circumstances before us we express no view on the merits of plaintiff’s position that the absence of information justified non-compliance with the assessor’s demand, leaving the question of what constitutes “good cause” to the county boards for a case by case determination under N.J.S.A. 54:4-34. Bather, we conclude that plaintiff's failure to respond in any fashion to the assessor’s request precluded plaintiff from asserting a “good cause” claim before the Board.
[Ocean Pines, supra, 112 N.J. at 8-9, 547 A.2d 691.]
In Tower Ctr. Assocs. the taxpayer made no response to a Chapter 91 request and claimed “good cause” based on the illegality of the scope of the request. The Appellate Division rejected the taxpayer’s argument and focused on the taxpayer’s responsibility to “respond” within the forty-five day period even if the response does not include information satisfying the assessor’s request.
We need not decide what a taxpayer must do to challenge a request deemed improper. The taxpayer should undoubtedly respond at least to that part of the request not deemed improper and, as suggested in Terrace View (although stated in the context of an appeal by the taxpayer under N.J.S.A. 54:3-21 after the assessment), seek relief as to the balance from the County Board of Taxation, or the Tax Court where it would have direct appellate jurisdiction, following an unsuccessful endeavor to convince the assessor that the request must be modified. We hold only that the taxpayer must take action to challenge the request within the forty-five day statutory time limit, and to put the municipality on notice of its contention. In any event, the taxpayer cannot just sit by and do nothing until the assessment is finalized, as this taxpayer did, and thereafter seek to appeal the assessment by plenary review. Such conduct results in “unnecessary expense, time and effort in litigation.”
[Tower Ctr. Assocs., supra, 286 N.J.Super. at 438-39, 669 A.2d 829 (citations omitted).]
*463 The quoted language from Ocean Pines and Tower Ctr. Assocs. establishes a two step analytical framework for deciding motions to dismiss under Chapter 91. The first step is a determination of whether the taxpayer made a sufficient “response” to the assessor’s request within the statutory forty-five day period. The second step is a determination of whether the taxpayer’s failure to furnish, or delay in furnishing, the requested information resulted from “good cause.” This second step is reached, however, only if the county board or the Tax Court finds that the taxpayer made a sufficient response within the forty-five day period.
In making the determinations as to whether a response is sufficient and whether “good cause” exists which excuses noncompliance, a county board and the Tax Court must be cognizant of the purpose of Chapter 91 “to assist the assessor in the first instance, to make the assessment and thereby ... to avoid unnecessary expense, time and effort in litigation.” Terrace View, supra, 5 N.J.Tax at 474-75 (quoted and adopted by the Supreme Court in Ocean Pines, supra, 112 N.J. at 7, 547 A.2d 691), and cognizant of the Supreme Court’s finding in Ocean Pines (in a procedural due process context) that “the government interest involved is significant, i.e., the timely receipt of economic information necessary for an accurate valuation of the property, an interest that clearly outweighs the private interest involved [i.e. the amount of the property tax assessment and the actual tax bill to the taxpayer].” Ocean Pines, supra, 112 N.J. at 10, 547 A.2d 691 (emphasis added).
Accordingly, in order for a response (other than one furnishing the requested information) to be sufficient, it must be made within the forty-five day time period and must communicate to the assessor, in reasonable detail, a plausible basis for the taxpayer’s inability to furnish the requested information within such time period. In order for “good cause” to be shown, a taxpayer must demonstrate that it “could not” answer the assessor’s request within the statutory time limit. “Could” is the past tense of the verb “can” which is defined as “to be able to do, make or accomplish.” Webster’s New Collegiate Dictionary 158 (1980).
*464 Applying the foregoing discussion to the facts before me, I find that plaintiffs response within the forty-five day statutory time period was not sufficient. The only “response” plaintiff made to the assessor or to the revaluation company within the forty-five day period was in the form of five telephone calls from Mr. Glantemik over a period extending from approximately mid-August, 1994 through the middle to end of September, 1994. One or more of the telephone calls may have been made after expiration of the forty-five day period. These telephone calls were not returned, and the record is barren of evidence as to what messages were left with the revaluation company. As a result, there is no basis for determining that the taxpayer “put the municipality on notice of its contention,” Tower Ctr. Assocs., supra, 286 N.J.Super. at 438, 669 A.2d 829, or its questions or concerns. Plaintiff could easily have communicated its questions and concerns to the revaluation company, or the assessor by letter or telefax. Plaintiffs failure to do so, after failing to communicate those questions and concerns orally, is fatal to its appeal.
Although this finding of an insufficient “response” warrants the granting of defendant’s motion, it does not constitute approval or condonation of the failure by the revaluation company (particularly its principal) to return any of Mr. Glanternik’s five telephone calls. I find that this non-responsiveness did not result from bad faith, dishonesty or an attempt to achieve a “bargaining or litigational advantage,” F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 427, 495 A.2d 1313 (1985), but note that such non-responsiveness was inappropriate.
Even if, in step one of the Ocean Pines/Tower Ctr. Associates analytical framework, I had found that plaintiffs telephone calls constituted a sufficient response, I would nevertheless grant defendant’s motion because I find, in step two of the analytical framework, that plaintiff failed to establish “good cause” for its failure to furnish the required information within the forty-five day time period contained in Chapter 91.
As noted above, the statute requires a showing of good cause why the taxpayer “could not” answer the assessor’s request within *465 the forty-five day period. Here plaintiff had available the data necessary for full and complete answers to the Chapter 91 request forms, and plaintiffs controller fully or substantially completed the forms well before expiration of the forty-five day period. Plaintiffs proofs, therefore, may have established why it did not furnish the requested information within the forty-five day period, but failed to demonstrate why it could not do so. Mr. Glanternik’s questions and concerns provide no basis for a finding that the plaintiff was unable to answer the Chapter 91 request within forty-five days. Within this time period plaintiff could have: (i) furnished the information called for by the Chapter 91 request and any additional information which Mr. Glanternik regarded as appropriate; or (ii) answered the Chapter 91 request to the best of plaintiffs ability and, in a letter of transmittal, stated either that there was additional information which plaintiff regarded as relevant or that plaintiff had certain questions which, upon resolution, might result in the providing of additional information.
Plaintiff did not provide information which even arguably satisfied the Chapter 91 request until December 19,1994,136 days after the request was mailed by the assessor. The information then provided was substantially incomplete in that it did not include operating expenses for the property or amounts of expense reimbursements by tenants. The acceptance and use by the principal of the revaluation company of this incomplete information, for purposes of setting the 1995 assessments on the subject property, does not excuse or vitiate plaintiffs failure to respond or furnish the information required by the request within the statutory forty-five day time period. The efforts by the assessor and revaluation company, after expiration of the forty-five day period, to obtain as much information as possible in order to set accurate assessments on plaintiffs property should not, in these circumstances, prejudice defendant’s rights under Chapter 91.
The strictness with which the requirements of Chapter 91 are to be enforced has been expressed repeatedly by the Tax Court, see e.g. Terrace View, supra and Carriage Four Assocs. v. Teaneck Tp., 13 N.J.Tax 172, 177 (Tax 1993), and reiterated by the *466 Appellate Division in Tower Ctr. Assocs., supra and Summerton Shopping Plaza v. Manalapan Tp., 15 N.J.Tax 173 (App.Div.1995). In Summerton Plaza the taxpayer opposed a motion to dismiss under N.J.S.A 54:4-34 on the grounds that the information required by the assessor’s request had been provided to the attorney for the municipality well in advance of the applicable assessing date in the context of settlement discussions relating to a prior year’s tax appeal. The taxpayer contended that this constituted substantial compliance with the requirements of the statute. The Appellate Division, citing Terrace View and Carriage Four Assocs., rejected the taxpayer’s arguments as “clearly without merit,” Summerton Plaza, supra, 15 N.J.Tax at 176, and went on to hold:
We are not at liberty to tamper with the plain language of the statute which mandates dismissal of an appeal not preceded by timely compliance with the assessor’s demand, subject to the reasonableness exception recognized in Ocean Pines____ We note that no “good cause” argument was here proffered to explain non-compliance, nor is any reasonable basis therefor apparent.
It was not “unfair” to require timely compliance with N.J.S.A. 54:4-34 in order to assist the assessor in meeting the assessment deadline for all properties in the taxing district. Special treatment for one requires special treatment for all, thwarting efficient operation of the assessment process.
[Id. at 176-177.]
Defendant’s motion to dismiss plaintiffs complaint is granted. Plaintiff shall have ten days from the date of entry of the Order of Dismissal to request a reasonableness hearing under Ocean Pines, supra.

The Tax Court, in direct appeals under N.J.S.A. 54:3-21, also has the authority under N.J.S.A. 54:4-34 for "good cause shown” to “impose ... terms and conditions for furnishing the requested information." Tower Ctr. Assocs. v. East Brunswick Tp., 286 N.J.Super. 433, 438, 669 A.2d 829 (App.Div.1996); Terrace View Gardens v. Dover Tp., 5 N.J.Tax 469, 474 (Tax 1982).