SMALL, J.T.C.
The plaintiffs in these eight matters sought review of their 1996 tax assessments by the Essex County Board of Taxation. The assessments were all affirmed by the county board under judgment code 34 requiring income and expense statements (N.J.S.A. 54:4-34). Following appeal by the plaintiffs from the county board judgments to the Tax Court, the defendant, City of Orange, now moves to dismiss the complaints for failure of the plaintiffs to comply with N.J.S.A. 54:4-34, as amended by L.1979, c. 91, sec. 1 (commonly known as Chapter 91). Defendant asserts that in each case, plaintiffs failed to timely respond to the Chapter 91 request of the municipal assessor for income' and expense information on the income-producing subject properties. Plaintiffs contend that the Chapter 91 requests were defective and thus required no response.
The plaintiffs in these cases can be divided into two groups according to the names of their respective principals: the Cassini matters and the Hwang matters. For each of the two groups, the municipal assessor for the City of Orange sent by certified mail, on or about September 22,1995, a request for income and expense information on the subject properties, along with a copy of N.J.S.A. 54:4-34. The critical portions of the letters read:
In accordance with N.J.S.A 54:4-3|sic], you are requested to submit the appropriate income and expense data requested on the attached form for the tax year ending December 81, 1995 for the property located at . . . . Such information will be considered by this office in determining the assessments for the property for the 1996 tax year.
[ (Emphasis added).]
It is undisputed that these requests were received by the property owners within one to three days of mailing.
In the Cassini matters, the property owners made no response to the Chapter 91 requests until about May 23, 1996 when they were filed with the assessor’s office. It is conceded that these *442 filings were made long after the 45-day response period prescribed in N.J.S.A. 54:4-34.
In the Hwang matters, the property owners allege, by certification of the principal Aileen Hwang, that prior to the expiration of the 45-day period she contactéd the assessor’s office and spoke with a woman working in that office who was not the assessor. Ms. Hwang offers telephone records with phone numbers indicating that she called the assessor’s office in mid-October 1995. Ms. Hwang asserts that she informed the assessor’s staff that the Chapter 91 requests could not be complied with because 1995 year-end data was not available since the requests were only made in September of 1995, and the data would not be available until early 1996. Ms. Hwang certifies that the woman with whom she spoke acknowledged that the assessor’s office had received the 1994 income and expense information for the subject properties, and instructed Ms. Hwang to defer response of the 1995 Chapter 91 requests since the city had the most readily available information at that time. As a result, the responses to the 1995 Chapter 91 requests in the Hwang matters were not filed with the assessor’s office until about May 23,1996.
The defendant disputes the factual claims put forth by Ms. Hwang. The municipal tax assessor certifies that all telephone calls relating to Chapter 91 issues are forwarded to her, and that she never spoke with Ms. Hwang or any other person representing the plaintiffs regarding these matters. Further, the assessor claims that the telephone records offered by Ms. Hwang do not indicate any calls to her phone number at the assessor’s office.
Plaintiffs argue, in all of the cases, that they had no obligation to comply with the Chapter 91 requests because such requests were defective in that they sought information not yet available, or were unclear as to the information that was to be provided. In the alternative, plaintiffs in the Hwang matters assert that they gave sufficient notice to the assessor’s office of their inability to comply with the Chapter 91 requests such that they should be excused from the 45-day filing deadline. Plaintiffs in the Cassini matters do not raise this latter defense since no attempt to contact *443 the assessor’s office was made before the income and expense information was filed in May 1996.
Defendant claims that the Chapter 91 requests were clear. Defendant asserts that when the request letters and the income and expense data forms are read together, it is evident that property owners are to provide whatever information is available on the date of the request, and that such requests only seek estimates, not actual figures, for compliance.
In a post-argument submission, the movant, defendant, City of Orange, asserts that for the tax year 1995, the Cassini plaintiffs received similar requests for 1994 year-end data and responded to them by submitting information for the period January 1994 through October 1994. Additionally, the city asserts that of the 600 Chapter 91 requests made in 1995 for the 1996 tax assessments, the assessor received 580 responses. These facts are used to support the arguments that the requests were not ambiguous, could be responded to, were in fact responded to by the majority of taxpayers, and were responded to by one of the principals in these cases in a virtually identical situation in the prior year. Defendant asserts that plaintiff had an obligation to respond in some way, even to a confusing request, because the Cassini taxpayers provided a partial answer in the prior year.
For purposes of these motions to dismiss, I must determine whether the Chapter 91 requests were defective such that the plaintiffs could entirely ignore the 45-day filing deadline for sending the income and expense data to the assessor. Only if I determine that the requests were not defective do I need to consider whether the plaintiffs in the Hwang matters provided sufficient notice to the assessor to avoid the need for further compliance with the requests.[1]
*444 I.
N.J.S.A. 54:4-34 provides:
Every owner of real property of the taxing district shall, on written request of the assessor, made by certified mail, render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, and produce his title papers, and he may be examined on oath by the assessor, and if he shall fail or refuse to respond to the written request of the assessor within 45 days of such request, or to testify on oath when required, or shall render a false or fraudulent account, the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall be heard from, the assessor's valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 15 days of such request or to testify on oath when required, or shall have rendered a false or fraudulent account. The county board of taxation may impose such terms and conditions for furnishing the requested information where it appears that the owner, for good cause shown, could not furnish the information within the required period of time. In making such written request for information pursuant to this section the assessor shall enclose therewith a copy of this section.
[ (Emphasis added).]
The purpose of this statute “is to afford the assessor access to fiscal information that can aid in valuing the property [and] ... encourage compliance with the accounting requirement.” SKG Realty Corp. v. Wall Tp., 8 N.J.Tax 209, 211 (App.Div.1985).
There are two lines of cases with respect to the obligations of the property owner and the obligations of the assessor under N.J.S.A. 54:4-34. Terrace View Gardens v. Dover Tp., 5 N.J.Tax 469 (Tax 1982), aff'd, o.b. 5 N.J.Tax 475 (App.Div.), certif. denied, 94 N.J. 559, 468 A.2d 205 (1983), and Ocean Pines, Ltd. v. Point Pleasant Bor., 112 N.J. 1, 547 A.2d 691 (1988), and their progeny, stand for the unequivocal proposition that, absent a good cause excuse made within the 45-day time period, property owners must comply with the Chapter 91 request within 45 days or be deprived of the opportunity to appeal their tax assessments. In Ocean Pines, supra, our Supreme Court rejected any claim by the property owner that it did not have the necessary information in its possession at the time of the request. The Court, quoting Terrace View Gardens, supra, imposed strict requirements on the obligations of property owners:
[r]efusals on the part of the taxpayers to cooperate with local property assessors cannot be tolerated by this court. Legitimate requests for information by asses *445 sors to prepare assessments are actions which should be encouraged by this court. Taxpayers frequently complain of local property tax assessors and their work. Here the taxpayer had an opportunity to supply the assessor information pertinent to the assessor’s work. It failed and refused to do so without any explanation, and its attitude in failing to even respond to the assessor’s legitimate statutory request is inexcusable.
[Ocean Pines, supra, 112 N.J. at 8, 547 A.2d 691, quoting Terrace View Gardens, supra, 5 N.J.Tax at 474-75.]
Subsequent cases have extended the obligation of property owners to respond to the Chapter 91 request regardless of the burden of the request.
... Chapter 91 provides a system for obtaining information necessary to establish the value of property for purposes of levying tax assessments. It may be that the scope of a request is too broad, or in some way infringes on the rights of the taxpayer, but the statutory requirement cannot be altogether ignored.
We need not decide what a taxpayer must do to challenge a request deemed improper. The taxpayer should undoubtedly respond at least to that part of the request not deemed improper and, as suggested in Terrace View ..., seek relief as to the balance ... following an unsuccessful endeavor to convince the assessor that the request must be modified.
We hold only that the taxpayer must take action to challenge the request within the forty-five day statutory time limit, and to put the municipality on notice of its contention. In any event, the taxpayer cannot just sit by and do nothing until the assessment is finalized, as this taxpayer did, and thereafter seek to appeal the assessment by plenary review. Such conduct results in “unnecessary expense, time and effort in litigation.”
[Tower Ctr. Assocs. v. East Brunswick Tp., 286 N.J.Super. 433, 438-39, 669 A.2d 829 (App.Div.1996) (citations omitted).]
The Ocean Pines/Terrace View/Tower Ctr. Assocs. line of cases was summarized in TMC Properties v. Wharton Bor., 15 N.J.Tax 455 (Tax 1996), as requiring a two-step analytical approach to Chapter 91 issues:
The first step is a determination of whether the taxpayer made a sufficient “response” to the assessor’s request within the statutory forty-five day period. The second step is a determination of whether the taxpayer’s failure to furnish, or delay in furnishing, the requested information resulted from “good cause.” This second step is reached, however, only if the county board or the Tax Court finds that the taxpayer made a sufficient response within the forty-five day period.
[Id. at 463.]
The TMC Properties case additionally established that a sufficient response required the property owner to communicate in “reasonable detail” the reason for the inability to comply with the Chapter 91 request. Although the door was left open in that case for an *446 oral communication of that reason, the court stressed that written notice was almost always more appropriate.
The second line of cases imposes a greater burden on the assessor than the property owner in complying with N.J.S.A. 54:4-34. These cases take two approaches. One approach focuses on the door-closing consequences that leave no appeal remedies to property owners who fail to comply fully with the Chapter 91 requirements, and considers whether the municipality has complied with its mandatory obligations under the statute. The second approach examines the purpose of the Chapter 91 request, and considers whether the assessor can in fact benefit from the data provided by the property owner.
The earliest case involving the first approach is SAIJ Realty, Inc. v. Town of Kearny, 8 N.J.Tax 191 (Tax 1986). There, the municipality sent a Chapter 91 request to the property owner, but failed to include a copy of the current version of the statute, as required. Plaintiff did not timely respond to the request, and the municipality moved for dismissal. The court denied the motion, noting the mandatory nature of the requirement of sending a copy of the statute which included language detailing the sanction (loss of right to appeal the assessment) for non-compliance by the property owner. The court, focused on the inequities in enforcing compliance against the property owner but not the municipality, stated:
It is well settled that a municipality is not exempt from the principles of fair dealing.
... Notwithstanding this egregiously careless disregard of the municipality’s statutory responsibility [in not sending the correct version of the statute], defendant seeks to hold plaintiff to a scrupulous observance of plaintiff’s responsibility under the law, and to punish plaintiffs noncompliance by invoking the ultimate sanction, namely, denial of judicial review of plaintiffs assessment. This is unfair.
[Id at 196-97 (citations omitted).]
After SAIJ Realty, other cases have required that Chapter 91 requests give notice to property owners which is “clear cut” as to the information they are to provide to the assessor. ML Plainsboro Ltd. Partnership v. Plainsboro Tp., 16 N.J.Tax 250, 257-59 (App.Div.), certif. denied, 149 N.J. 408, 694 A.2d 194 (1997); *447 Summerton Shopping Plaza v. Manalapan Tp., 15 N.J.Tax 173, 177 (App.Div.1995). These cases support the notion developed in SAIJ Realty that when in doubt about the information sought by assessors, the benefit of that doubt must favor the property owners given the consequences of non-compliance.
N.J.S.A. 54:4-34 confers authority upon the tax assessor to determine the scope of information to request from a taxpayer and a corresponding duty to give the taxpayer clear and unequivocal notice of the specific information which must be submitted. Tax assessors are experts in the field of real estate valuation, see N.J.S.A. 54:1-35.25, while the owners of income producing properties include not only substantial business enterprises ... but also small business persons who may have difficulty reading complex and confusing forms and may lack ready access to legal advice. Consequently, “the assessor’s request notice to the taxpayer must be clear cut.” Summerton Shopping Plaza, v. Manalapan Township, 15 N.J.Tax 173, 177 (App.Div.1995). Moreover, if there is room for reasonable doubt as to whether an average owner of an income producing property would understand an assessor’s request to include a particular kind of information, the benefit of that doubt should be given to the taxpayer. Cf. Great Adventure, Inc. v. Township of Jackson, supra, 10 N.J.Tax [230] at 233 [(App.Div.1988)] (noting that “the severity of the penalty for noneompliance provided for by N.J.S.A.. 54:4-34, namely, the taxpayer’s loss of his right to appeal the assessment, requires a strict construction of the statute”); see also SAIJ Realty, Inc. v. Town of Kearny, 8 N.J.Tax 191, 196-97 (Tax Ct.1986).
[ML Plainsboro, supra, 16 N.J.Tax at 257.]
The Appellate Division in ML Plainsboro found that the Chapter 91 request’s language, primarily referring to rental income and expenses, could lead a property owner to conclude that the request did not apply to property not leased to third parties as opposed to being used exclusively by the taxpayer or its affiliates. As such, the property owner’s failure to provide any income and expense information to the assessor, other than a letter within the 45-day period which stated that the property was not income-producing, did not preclude the property owner from appealing from the assessment.
The cases involving the second approach include John Hancock Mut. Life Ins. Co. v. Wayne Tp., 13 N.J.Tax 417 (Tax 1993), Westmark Partners v. West Deptford Tp., 12 N.J.Tax 591 (Tax 1992), and Delran Holding Corp. v. Delran Tp., 8 N.J.Tax 80 (Tax 1985). All three cases deal with the significance of the date in which the Chapter 91 request was made relative to the time in *448 which the assessor had to value the subject properties for assessment purposes.
In Delran Holding, the court held that Chapter 91 requests made after the property owner had filed an appeal were impermissible and the property owner would not be bound to comply with the request. “Since the request was not made until after the assessor received a copy of plaintiffs complaint appealing the assessment, the information requested could only be utilized to defend the assessment already levied. The assessor’s letter requesting income and expense information is nothing more than a ‘demand for interrogatories’; this is not the purpose of the statute.” Id at 83. As a result, the Chapter 91 motion to dismiss was denied.
This examination of the purpose behind the assessor’s use of the Chapter 91 request was then extended in Westmark Partners, supra. There, the property owner received Chapter 91 requests in June 1991 for the 1991 tax year assessment, and in February 1992 for the 1992 tax year assessment. The property owner failed to comply with either request, and the assessor moved to dismiss both complaints that were subsequently filed. The property owner argued that it should not be required to comply with the requests because the information elicited could not be used in the assessor’s determination of the value of the subject property for each tax year. The property owner noted that the assessor was required to submit the tax rolls by January 10 of each tax year to the county board of taxation, N.J.S.A. 54:4-35, with revisions and corrections due by the county board no later than May 13, N.J.S.A. 54:4-46, -47, and -55. In each tax year, the January 10 dates had already passed before the Chapter 91 requests were made. The court found this fact to be dispositive in denying the motion to dismiss:
By the adoption, in 1979, of the chapter 91 amendment to N.J.S.A. 54:4-34, the Legislature’s purpose was to provide assessors with additional authority to secure as much information as possible to aid in ascertaining the fair market value of income-producing property. In so doing, however, the Legislature obviously intended that the income data be sought prior to setting assessments to be forwarded to the county boards.
*449 ... I conclude that the notices sent ... [were] not for the purpose of securing data to aid the assessor . . . .
I further find that the township’s argument to justify its late notice, to wit, that the data may be useful to enable the assessor to adjust her assessment by filing an assessor’s appeal is without merit. Clearly, the Legislature did not intend that N.J.S.A. 54:4-34 be used as a discovery tool “after the fact.”
[Westmark Partners, supra, 12 N.J.Tax at 596-97.]
The court in John Hancock, supra, followed Delran Holding and Westmark Partners in finding that Chapter 91 requests sent out in October of the pre-tax year could be used in collecting data which could aid the assessor in preparing the tax rolls for the following tax year. The court emphasized that January 10 of the tax year, and not October 1 of the pre-tax year, was the critical date for purposes of the Chapter 91 analysis. John Hancock, supra, 13 N.J.Tax at 421-22.
This determination by the court in John Hancock is relevant to the within motions because in both cases the assessors sent out the Chapter 91 requests late in the pre-tax year for use in the following tax year’s assessments. There is, however, a critical difference between the two cases. In John Hancock, the Chapter 91 request sought “current income and expense data” for the subject property. Id. at 419-20. In the within matters, the Chapter 91 requests sought “appropriate income and expense data requested on the attached form for the tax year ending December 31, 1995.” Such data could not possibly be available before January 1, 1996, or even January 10, 1996 (the date on which the assessor must finalize assessments), well after the expiration of the 45-day period.
The language in the assessor’s letters in the within matters clearly demands data for the tax year ending December 31,1995. No other information was requested. Unlike John Hancock, supra, it is not clear from a reading of the letters and the attached income and expense forms that the property owner is to provide whatever data is available, by estimation or otherwise, on the date the letters are received. Requesting information for the “tax year ending December 31,1995” is not the same as requesting “current *450 information” for that tax year, or information for a calendar year already ended. The assessor’s letters and forms do not explicitly ask for estimates, even though the definition of certain terms might ask for assumptions on the part of the property owner (e.g., assume 100% occupancy). The obligations of the property owners in these matters are far from “clear cut.” Given the severity of the penalty for failure to comply with the Chapter 91 requests, a tremendous inequity would be created by dismissing these complaints. ML Plainsboro, supra, 16 N.J.Tax at 257; Summerton Shopping, supra, 15 N.J.Tax at 177. The Chapter 91 requests in these matters were improper and defective as a result of the unclear language in the assessor’s request letters.
I must still determine whether the improper nature of the requests releases the property owners from their obligations to timely comply with the requests, or to respond in some manner, even to communicate that they are unable to comply with the requests.
II.
“In dealing with the public, government must ‘turn square corners.’ ” F.M.C. Stores Co. v. Morris Plains Bor., 100 N.J. 418, 426, 495 A.2d 1313 (1985); see also SAIJ Realty, supra, 8 N.J.Tax at 197 (providing that “[i]f, as Justice Holmes said in Rock Island, Arkansas & Louisiana R.R. Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920), ‘Men must turn square corners when they deal with the government,’ it behooves government to behave with corresponding rectitude toward its citizens”). The defendant municipality cannot seek to close the door of tax appeals until it has given property owners fair notice of their obligations in the Chapter 91 requests. It is not enough that the property owner can appeal from the following year’s assessment if the current year’s appeal is dismissed. See Jepson Refrig. Corp. v. Trenton City, 15 N.J.Tax 467, 473-74 (Tax), rev’d on other grounds, 295 N.J.Super. 492, 685 A.2d 505 (App.Div.1996) (noting that although property tax appeals are perpetually renewable causes of action, a possible tax refund is lost by the dismissal of a complaint). Each assessment is a new *451 cause of action, and the municipality must deal fairly with the property owner each time an assessment is made.
Two lines of cases have developed under N.J.S.A. 54:4-34. The issue of how and whether the property owner should respond to improper Chapter 91 requests has been left unresolved. In Tower Ctr. Assocs., supra, the property owner argued that it was not obligated to respond to improper Chapter 91 requests, citing Ocean Pines, supra, 112 N.J. at 8, 547 A.2d 691 (“[pjlaintiff failed to comply with a proper request for income and expense information”)(emphasis added), Carriage Four Assocs. v. Teaneck Tp., 13 N.J.Tax 172, 177 (Tax 1993)(“[g]enerally, a taxpayer’s property tax assessment appeal will be dismissed where the taxpayer fails to comply with a legitimate chapter 91 request”) (emphasis added), and Terrace View Gardens, supra, 5 N.J.Tax at 474 (“the taxpayer simply ignored the request and failed and refused to comply with a legal and reasonable request ”) (emphasis added). Tower Ctr. Assocs., supra, 286 N.J.Super. at 436-37, 669 A.2d 829. As discussed above, the Appellate Division specifically avoided any decision on this issue, stating that “[w]e need not decide what a taxpayer must do to challenge a request deemed improper.” Id. at 438, 669 A.2d 829. Instead, the court only required the property owner to respond, in some fashion, to a proper request.
The history of reported cases under N.J.S.A. 54:4-34 underscores the significance of providing some notice to the assessor that the property owner cannot comply with the Chapter 91 request. In those cases where no response was given by a property owner, the court granted dismissal in all but three of them. Ocean Pines, supra, 112 N.J. 1, 547 A.2d 691; Tower Ctr. Assocs., supra, 286 N.J.Super. 433, 669 A.2d 829; Pierce Davidson Assocs. v. Franklin Tp., 15 N.J.Tax 709 (App.Div.1996); Summerton Shopping, supra, 15 N.J.Tax 173; Southgate Realty Assocs. v. Bordentown Tp., 246 N.J.Super. 149, 586 A.2d 1338 (App.Div.1991); SKG Realty, supra, 8 N. J.Tax 209; Rolling Hills of Hunterdon LP v. Clinton Tp., 15 N.J.Tax 364 (Tax 1995); ADP of N.J., Inc. v. Parsippany-Troy Hills Tp., 14 N.J.Tax 372 (Tax 1994); John Hancock, supra, 13 N.J.Tax 417; Pisani v. Wayne Tp., 13 N.J.Tax 412 (Tax 1993); Carriage Four Assocs., supra, 13 *452 N.J.Tax 172; Terrace View, supra, 5 N.J.Tax 469. In those cases where some response was given by the property owner, the court denied dismissal in each of them. ML Plainsboro, supra, 16 N.J.Tax 250; Monsanto Co. v. Town of Kearny, 8 N.J.Tax 109 (Tax 1986). But see TMC Properties, supra, 15 N.J.Tax 455 (holding that telephone message which did not apprise the assessor of the reasons for not responding was inadequate to defeat motion to dismiss).
However, it is the three exceptions to the former category that indicates that circumstances exist in which the courts will not dismiss cases even though no response was given. In SAIJ Realty, supra, 8 N.J.Tax 191, the court found the assessor’s Chapter 91 request defective because the wrong version of the statute was included with the request, and thus denied the motion to dismiss. In Westmark Partners, supra, 12 N.J.Tax 591, and Delran Holding, supra, 8 N.J.Tax 80, the courts found that the information sought by the assessor could not be used to prepare the assessment rolls by the January 10th deadline, and thus denied the motions to dismiss. In effect, the property owners in the within matters seek to extend the logic of Westmark Partners and Delran Holding by asserting that where the assessor seeks information that cannot possibly be available by the end of the 45-day period, the property owners should not be compelled to comply with the Chapter 91 requests. The earliest possible time in which the property owners in these matters could have obtained the 1995 year-end data as sought by the assessor’s requests would have been no earlier than December 31, 1995, and more logically several months later when the plaintiffs certified that their books for 1995 would be closed.
There is no question that if the Chapter 91 requests in these matters sought year-end data for the 199k tax year and the property owners failed to respond, the complaints would be dismissed on the defendant’s motions. It is not clear whether or how the assessor erred in seeking 1995 data before the end of 1995 rather than 1994 data. Should the consequence of that error lie with the assessor and the municipality, or with the property owner who must ascertain what the assessor was seeking?
*453 A property owner that receives a Chapter 91 request for which a response is impossible, or for which it is unclear what response is being sought, may not have its appeal dismissed for failure to timely respond to such a request. The government must speak in clear and unequivocal language where the consequence of non-compliance is the loss of the right to appeal assessments. The taxpayer should not bear the burden of divining the assessor’s intent or purpose in sending a Chapter 91 request. This is not to say that property owners should ignore the Chapter 91 requests, even where they are improper. Such determinations of the propriety of the requests are made by the county boards of taxation and the courts, and property owners continue to run the risk of dismissal if they do not comply and the county board or the court finds that the requests were valid. Property owners should heed the advice of TMC Properties, supra, and communicate problems with compliance within the 45-day statutory period, preferably in writing. (No reported case has dismissed a complaint where the property owner made a written response within the 45-day period, even if that response was that the taxpayer was not obliged to answer, or could not comply with, the request). However, failure to do so when in fact such requests are impossible or imprecise will not result in automatic dismissal because the obligations of the assessor (the government) to speak clearly when it seeks dismissal of a case are at least as compelling as the obligations of the property owner to respond to Chapter 91 requests. The fact that most recipients of the assessor’s Chapter 91 requests filed responses does not obviate the government’s obligations to those who did not respond where such requests were not clear. The fact that a party may have responded to a similarly imprecise request in a prior year does not obligate that party to respond in subsequent years.
III.
The motions to dismiss the complaints in these eight matters are denied. Orders will be entered accordingly. The matters will be set down for trial on the merits.

 The factual issues in dispute are critical and cannot be resolved without the taking of testimony. Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 666 A.2d 146 (1995). Thus, should the court determine that the assessor's Chapter 91 requests were proper, the Hwang matters will be set down for trial.