NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY



**Mala Sundar**
 **JUDGE**

R.J. Hughes Justice Complex
 P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 815-2922
TeleFax:   (609) 376-3018
taxcourttrenton2@judiciary.state.nj.us

February 8, 2018

Cheryl T. Humes, Esq.
Zipp Tannenbaum Caccavelli, L.L.C.
280 Raritan Center Parkway
Edison, New Jersey 08837

Joseph Palombit, Esq.
Hoagland Longo et al.
40 Paterson Street
New Brunswick, New Jersey 08901

Re: Sudia Associates, L.L.C. v. City of New Brunswick
Block 47, Lot 22.01 (100 Hamilton Street)
Docket No. 001293-2017

Dear Counsel:

This opinion decides defendant's motion to dismiss the above captioned complaint on grounds plaintiff failed to respond to the tax assessor's request for income and expense information pursuant to N.J.S.A. 54:4-34 (commonly known as Chapter 91) as to the above captioned property ("Subject"), located in defendant ("City"). Plaintiff contends that it had good cause to send a late response, which was that its "taxes and audit for calendar year 2015" would not be completed by the 45-day deadline, and further that it was assured by the City's assessor's office that a response beyond the 45-day limit was "no big deal." Plaintiff also contended that the City had received its response, dated October 31, 2016, since an inspector for the revaluation company (the City having undergone a district-wide revaluation in 2016 effective for tax year 2017) had verified the provided

*

income and expense ("I&E") information with plaintiff's office manager sometime in November 2016.

The City refuted these assertions with certifications from its assessor and a representative of the revaluation company. The City contends that even if the plaintiff's allegations are true, that plaintiff spoke with someone from the assessor's office, the assessor never received a response from plaintiff.

The court held a hearing in this regard due to opposing allegations in the certifications. Testimony was provided by plaintiff's office manager, the assessor, and a representative of the revaluation company.

For the reasons following, the court denies the City's motion to dismiss the complaint.

## FACTS

Sometime in 2013, the Subject, which used to be a four-family home, merged with two other lots (identified as Block 47, Lot 22 and Block 47, Lot 23, a four-family home), for the construction of a 31-unit apartment building. It became tenanted sometime in September of 2014.

For tax year 2015, the City sent a Chapter 91 request to plaintiff by letter dated June 30, 2014 seeking I&E information for the prior year of 2013. With respect to the I&E information letter, the assessor testified that he does not retain proofs of mailing and their receipt, after two years from the date mailed, and was unable to provide proof of receipt for the mailing of the Chapter 91 request. He did not recall receiving a response but stated that since the Subject was undergoing construction in 2013, it was likely not receiving any income.

For tax year 2016, the City sent a Chapter 91 request on or about June 30, 2015 asking for I&E information for the prior year of 2014. On or about July 8, 2015, plaintiff provided such information for the period September 1, 2014 to May 31, 2015. The response was signed by

2

plaintiff's office manager (who testified in these proceedings). On the response it was noted: "We did not open for occupancy until 9/1/2014 so all numbers are based on 9 months not 12."

On or about June 1, 2016, the assessor mailed by certified mail, return receipt requested, a Chapter 91 request to plaintiff for I&E information from the prior year of 2015. Separately included was a copy of the statute, and the I&E form.

On or about June 23, 2016, the post office returned the certified mailing to the assessor's office. The returned envelope was marked "Return to Sender Unclaimed Unable to Forward." The assessor received this returned mail on June 28, 2016.

The assessor then sent the same Chapter 91 request by first-class mail on or about August 8, 2016. Plaintiff stated that it was received in mid-August.

Plaintiff's office manager (who is also the book-keeper) testified that she has been with plaintiff in this capacity for over 10 years. She works two days a week at the office, which is on the first floor of the Subject. She handles all aspects of running the office for plaintiff. She stated that she is extremely conscientious and places any paperwork that requires action on in a "to-be-done" file, which she completes on the two days she is at work (Tuesdays and Thursdays).

Mail for the Subject is sent to plaintiff's owner's home address in Somerset. All mail is delivered to the mailbox on the curb. The owner's home is located at a considerable distance away from the street, and is gated since he has several animals on the premises. Prior to her working at the Subject, plaintiff's office manager used to work from the basement of the owner's home, thus, knew that no mail was ever delivered to the owner himself or to herself personally at the house. After her transition into using the office at the Subject, the manager stated that she picks up mail from the owner's mailbox (her home being close to plaintiff's owner's house) and brings it to work. Plaintiff's owner visits the office at the Subject for matters requiring his signature.

The manager stated that she had never seen a Chapter 91 request before, since prior to the Subject's merger, conversion, and use, she only dealt with the property as a four-family residence, for which Chapter 91 requests were never received. This is why when she received one in June of 2015, she had to reach out to a "member from our construction department" who would have all information as to the construction costs and the like, since the Subject was brand new, and that person assisted her in the filling out the information on the Chapter 91 request.

The manager also testified that due to the relatively new conversion and use of the Subject as a 31-unit apartment building in 2015, she had been faced with an inordinate amount of paperwork for the Subject (garbage, utilities, permits, health codes, rental agreements and the like). She claimed this is why, when she received the instant Chapter 91 request, she could not recollect having received one, and whether or how she had responded to the same.

She stated she was aware that the Subject was on a fiscal year basis (June to July) and knew that "the audited financial statements for [plaintiff's] income tax returns," are generally completed mid-October by plaintiff's accountant. The returns would be sent by the accountant to plaintiff's home address, and after the manager picked the mail up, plaintiff's owner would sign and date the same from the office at the Subject, after which the manager mailed them back to the accountant.

Thus, since the tax returns, within the financial statements, would not be finalized until October 2016, the manager stated that she knew that she could not provide a response to the Chapter 91 request within the 45-day time limit (end of September 2016[1]). She testified that she therefore immediately called the assessor's office, and explained to the person who answered the phone (a female), of this quandary. The response allegedly was that this would be "no big deal."

---

[1] Presuming that the August 8, 2016 re-sent Chapter 91 request was received by Friday, August 11, 2016 (adding three days for mailing), the 45-day time limit would be Sunday September 25, 2016, thus, Monday September 26, 2016.

4

The manager stated that she, therefore, believed that she was allowed additional time to respond to the Chapter 91 request. She stated that the assessor's office never informed her that she could provide unaudited financial statements for 2015 "to ensure compliance with the statute," and if so alerted, she would have immediately sent out this information with the Chapter 91 request.

Thereafter, once the income tax returns were received, and the plaintiff's owner signed the same, she also prepared the Chapter 91 response, which plaintiff's owner signed and dated it October 31, 2016. She then mailed the response to the assessor's office immediately. She conceded that the accountant was the same one plaintiff had used for the last several years, who could have provided the I&E information sought for in the Chapter 91 request, and that she never reached out to the person who had allegedly assisted her the year before in this regard.

Plaintiff's manager also stated that when a representative from the revaluation company visited the Subject for inspection, sometime in November of 2016, she believed the City had received plaintiff's response, which she claimed she mailed out on or about October 31, 2016. This was because while that individual inspected the Subject, he also allegedly "verified information in" the "completed 2016" Chapter 91 response with the manager.

The assessor testified that it could have been possible that if plaintiff's manager had called to inform his office that the I&E information could not be submitted timely, his staff person, who is female, could have responded that the information can be sent in at a later date. He stressed that, however, no staff member ever conveys that the 45-day time limit is therefore extended or relaxed because the practice is to state that late information would be accepted and used to set the assessment, however, still be deemed a late submission. The assessor testified that no response was ever received from plaintiff, because if he had received it, he would have provided the same

5

to the revaluation company, just as he had provided that company with plaintiff's I&E information from 2015.

A representative of the revaluation company (who was not the inspector of the Subject in November 2016) testified that the assessor provided the company with I&E information for 2015 and 2016 for purposes of revaluation. However, as to the Subject, the company received I&E information from 2015, but not from 2016. He averred that inspectors acting for the revaluation company only inquire about a property's physical characteristics, since they have no role in either setting the property's assessment, or in the valuation process. He stated that the revaluation company never received any 2016 I&E information from the property owner.

**FINDINGS**

In <u>TMC Properties v. Borough of Wharton</u>, 15 N.J. Tax 455, 463 (Tax 1996), the court noted that a Chapter 91 motion involves "two step analytical framework." (citing to <u>Ocean Pines, Ltd. v. Borough of Point Pleasant</u>, 112 N.J. 1 (1988)). First the court determines "whether the taxpayer made a sufficient 'response' to the assessor's request within" 45 days. 15 N.J. Tax at 463. Second, the court determines whether the "failure to furnish, or delay in furnishing, the requested information resulted from 'good cause.'" <u>Ibid.</u> In so doing, the court must remain cognizant of the statute's purpose to aid assessors in efficiently setting assessments. <u>Ibid.</u> A sufficient response is one that timely communicates to the assessor "in reasonable detail, a plausible basis for the taxpayer's inability to furnish the requested information within such time period." <u>Ibid.</u>[2]

_____

[2] The term "plausible" has a "range of definitions," dictionary-wise (to mean "'superficially fair, reasonable, or valuable but often specious . . . , or . . . appearing worthy of belief'"), in the "common legal parlance" (to mean, among others, "not yet fully formed"), or according to judicial discretion, with no definition in the Black's Law Dictionary. <u>See generally</u> Brandon L. Garrett, <u>Applause for the Plausible</u>, 162 <u>U. Pa. L. Rev. Online</u> 221 (2014).

Here, the court finds credible, from her testimony and demeanor, plaintiff's manager's assertion that she contacted the assessor's office as soon as she received the request in mid-August, thus, much before the 45-day time limit of September 26, 2016. Her testimony that she notified a female member of the staff as to her inability to furnish I&E information until after October 2016, and an alleged assurance by a female employee that this was acceptable, is also credible. This is because the assessor (male) admitted that his staff had a female member, and stated that the female staff may have assured plaintiff's manager that a late response could be sent in since that would be keeping with his office practice.

The assessor's refutation that a further assurance of relaxation or extension of the 45-day limit would have been proffered by his office is credible. The statute does not grant the assessor this discretion. See N.J.S.A. 54:4-34 ("county board of taxation" can extend the time to provide information upon "good cause"). See also Tower Center Assocs. v. Township of East Brunswick, 286 N.J. Super. 433, 438 (App. Div. 1996) ("[T]axpayer must take action . . . within the forty-five day statutory time limit, and to put the municipality on notice of its contention," and later "seek relief . . . from the County Board of Taxation, or the Tax Court . . . ."). However, this does not negate the court's finding that plaintiff's manager did timely contact the assessor's office and provide the reason for inability to comply with the 45-day deadline.

The court also finds that plaintiff's manager's belief of the I&E information becoming available only after the tax returns were finalized is not unreasonable under the particular facts of this case. Having filled out a Chapter 91 request only once before, it is not incredible that she believed the "income" to be reported on the Chapter 91 request would be the "income" reflected on a tax return, and since she was not in charge of preparing the latter, that she needed to wait until it was finalized by the accountant. The fact that she had responded promptly to the prior year's

Chapter 91 request does not undermine this belief, when one tempers that fact with her averments of having reached out to someone to help her fill in the information due to her unfamiliarity with Chapter 91 requests. The court therefore finds that there was good cause for the late response under the specific facts here.[3]

This then brings into issue the conflicting testimony of plaintiff claiming that the response was mailed, and the City claiming that the response was not received. The court finds both parties' claims to be equally credible in this regard, and finds both the plaintiff's manager and the assessor to be conscientious in their responsibilities (mailing by plaintiff, and procedure of noting receipts of Chapter 91 responses by the assessor). Although the court also finds credible the revaluation company's assertion that field inspectors do not discuss I&E information with property owners, it does not agree that because the company did not receive the 2016 Chapter 91 response from the assessor, it meant that the plaintiff did not mail a response. Due to the harsh consequences of a Chapter 91, the court will give the benefit of doubt of the mailing of the response to plaintiff. See J & J Realty Co. v. Township of Wayne, 22 N.J. Tax 157, 165 (Tax 2005) ("[W]hen a taxpayer, in good faith, responds by regular mail to a Chapter 91 request, and, through no fault or negligence of the taxpayer, the assessor does not receive the response," the complaint should not be dismissed because the statutory "limitation is appropriate only when a taxpayer has . . . 'failed or refused to

---

[3] This of course does not mean that the denial of the motion for this tax year is, or would be, a basis for plaintiff's manager (or plaintiff) to believe that Chapter 91 responses are contingent upon the date that the income tax returns are due or finalized. The Chapter 91 request does not mandate that the I&E information should be extracted from the filed, or the soon-to-be-filed, income tax returns, thus, implicitly allowing the income tax filing deadlines as extending the 45-day time limit. Indeed, such a conclusion is illogical given that the due date for income tax returns itself can be extended. Nothing bars the recipient from sending in a timely response with estimated numbers and a notation that the estimates are because tax returns are yet to be finalized. Therefore, a tie-in of the 45-day period to the due date for the filing of the income tax returns will not always necessarily be considered as a "plausible" reason for I&E information being unavailable for future tax years.

respond' to the assessor's request."). The court therefore denies the City's motion to dismiss the complaint.

**CONCLUSION**

An Order will be entered denying the City's motion. This conclusion is predicated on the very specific circumstances of this case.

Due to the recent revision of Tax Court assignments by the Chief Justice of the New Jersey Supreme Court dated January 22, 2018 (retroactive to January 16, 2018), the matter, which was retained by the undersigned for rendering a decision, will be returned to Hon. Mary Siobhan Brennan, J.T.C., for further scheduling.

Very truly yours,

Mala Sundar, J.T.C.