BIANCO, J.T.C.
This is the court’s decision with regard to the motion of Defendant East Orange to dismiss the appeal of Plaintiff Thomas Green, Jr. (the “Taxpayer”) for the Taxpayer’s failure to comply with the provisions of N.J.S.A. 54:4-34 (Chapter 91). The Taxpayer filed a *326 local property tax appeal before the Essex County Board of Taxation (the “County Board”) for the 2003 tax year, concerning his income-producing property located at 186-188 Amherst Street in East Orange, County of Essex, and designated as Lot 40 in Block 491 by the taxing district (the “subject property”)- East Orange moved to dismiss the appeal claiming that the Taxpayer failed to comply with the provisions of N.J.S.A. 54:4-34 (Chapter 91). The County Board granted that motion and the Taxpayer appealed to the Tax Court. East Orange has now moved before the Tax Court for dismissal of the appeal again alleging that the Taxpayer failed to comply with the requirements of N.J.S.A. 54:4-34. Both parties waived oral argument.
The facts indicate that on September 4, 2002, the East Orange Department of Property Taxation (the “Tax Assessor”)[1] mailed to the Taxpayer by certified mail return receipt requested, the Annual Statement of Income and Expenses for Income Producing Properties form (the “Income and Expense Form”) to be completed for the previous full tax year (i.e. January 1 through December 31, 2001), along with an explanatory cover letter and a copy of N.J.S.A. 54:4-34.
Affixed to the Property Identification section of the Income and Expense Form was the following mailing address label:
[[Image here]]
A similar, but not identical, mailing address label was affixed to the explanatory cover letter that appeared as follows:
*327 [[Image here]]
The “Article Addressed to” section of the return receipt (PS Form 3811, July 1999), that was completed by the sender (i.e. East Orange), had the following mailing address label affixed to it:
[[Image here]]
The return receipt was stamp-dated September 6, 2002, from the Piscataway, New Jersey post office, and shows a hand-written delivery date also on September 6, 2002. Under the section of the return receipt that was to be completed upon delivery, the “Received by” slot was left empty and the “Signature” slot was marked with a handwritten “X” to the far left of the space provided for the signature of the recipient. Exactly who wrote the “X” on the return receipt is not certain.[2] There is no dispute *328 as to the correctness of the Taxpayer’s mailing address at “11 Francis Street, Piscataway, New Jersey 08854” or the amount of postage paid by East Orange to mail the September 4, 2002 Chapter 91 request (i.e. $4.42).
The Taxpayer claims that he never received the Tax Assessor’s Chapter 91 request and consequently did not provide the income and expense information for the subject property within the 45-day period provided by N.J.S.A. 54:4-34. Without the benefit of the requested information, East Orange assessed the subject property at $35,700.[3] The Taxpayer appealed to the County Board, whereupon motion of East Orange, the appeal was dismissed with prejudice on August 11, 2003 for the Taxpayer’s failure to provide the requested income and expense information. The Taxpayer appealed to the Tax Court.
N.J.S.A. 54:4-34 provides that:
Every owner of real property of the taxing district shall, on mitten request of the assessor, made by certified mail, render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, and produce his title papers, and he may be examined on oath by the assessor, and if he shall fail or refuse to respond to the written request of the assessor within 45 days of such request, or to testify on oath when required, or shall render a false or fraudulent account, the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall be heard from the assessor’s valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such request or to testify on oath when required, or shall have rendered a false or fraudulent account. The county board of taxation may impose such terms and conditions for furnishing the requested information where it appears that the owner, for good cause shown, could not furnish the information within the required period of time. In making such written request for information pursuant to this section the assessor shall enclose therewith a copy of this section. [Emphasis added.]
The legislative purposes behind N.J.S.A. 54:4 — 34 is “to provide assessors with additional authority to secure as much information *329 as possible to aid in ascertaining the fair market value of income-producing property”, Westmark Partners v. West Deptford Tp., 12 N.J.Tax 591, 596 (1992), and “to diminish the likelihood of litigation.” John Hancock Mut. Life Ins. v. Township of Wayne, 13 N.J.Tax 417, 422 (1993), citing Terrace View Gardens v. Dover Tp., 5 N.J.Tax 469, 471-72 (1982), aff'd, 5 N.J. Tax 475 (App.Div. 1983), certif. denied, 94 N.J. 559, 468 A.2d 205. In 1979, the Legislature amended the statute to require that the “written request of the assessor ” be made by “certified mail.” N.J.S.A. 54:4-34, amended L. 1979, c. 91, § 1 (emphasis added).
East Orange argues that the Tax Assessor made a timely and proper request for income and expense information pursuant to N.J.S.A. 54:4-34. Additionally, East Orange argues that there is a presumption that the requirements of N.J.S.A. 54:4-34 were satisfied if the Tax Assessor’s request was properly addressed with the proper postage, deposited with the post office, and properly delivered. The Taxpayer contends that simply mailing the inquiry does not rise to the level needed to satisfy the requirements of N.J.S.A. 54:4-34.
East Orange’s request for the subject property’s income and expense information pursuant to N.J.S.A. 54:4-34 was timely under the decisions of the Tax Court. “To advance the purpose of N.J.S.A. 54:4-34, the assessor’s request must be timely, so that upon its receipt, the assessor can utilize the information by January 10.” John Hancock Mut. Life Ins., supra, 13 N.J. Tax at 422. Even a request made less than 45 days before the critical assessment date (in this matter October 1, 2002), can be timely under Westmark Partners where the court found that, pursuant to N.J.S.A. 54:4-23 [4] and N.J.S.A. 54:4-35 [5]:
*330 [T]he assessor, in the context of his administrative function of levying annual property assessments based upon an income producing property’s October 1 pretax year valuation, must request the income data permitted under chapter 91 within time for it to be incorporated in his determination of the correct assessments to be submitted to the county board by January 10 of the tax year.
[Westmark Partners, supra, 12 N.J.Tax at 596.]
Accordingly, “the assessment is not required to be completed until January 10 of the current tax year,” John Hancock Mutual Life Insurance, supra, 13 N.J.Tax at 422; and therefore, “[t]he October 1 ‘critical assessing date’ is merely a valuation date.” Ibid.
In the present matter, East Orange mailed the request on September 4, 2002. Assuming receipt by the Taxpayer on September 6, 2002, as East Orange claims, the Taxpayer’s time to respond would have expired on October 21, 2002. This would have allowed the assessor adequate time to utilize the income and expense information before January 10,2003.
Despite the timeliness of the Tax Assessor’s request, East Orange has not convinced this court that there is a presumption that the mailing requirements of N.J.S.A. 54:4-34 were satisfied. In support of this presumption argument, East Orange relies upon Szczesny v. Vasquez, 71 N.J.Super. 347, 177 A.2d 47 (App. Div.1962) aff'g 65 N.J.Super. 82, 166 A.2d 834 (Law Div.1960), and Towne Oaks v. South Bound Brook Bor., 326 N.J.Super. 99, 740 A.2d 684 (App.Div.1999), certif. denied, 164 N.J. 188, 752 A.2d 1290 (2000). Under the facts of the present case, however, the court finds that East Orange’s reliance on Szczesny and Towne Oaks is clearly misplaced.
In Szczesny, the Appellate Division held that:
By force of statute or by agreement, a required notice may be effectively given if properly mailed, regardless of its receipt. Absent such a legislative enaetment or contract provision respecting the method of giving notice, the general rule is that there is a presumption that mail matter correctly addressed, stamped and mailed was received by the party to whom it was addressed, which presumption is rebuttable and may be overcome by evidence that the notice was never in fact received. The rule is engendered by the probability that officers and employees of *331 the postal department will do their duty, and by the regularity and certainty with which, according to common experience, the mail is delivered.
[Id. at 354, 177 A.2d at 50.]
Szczesny is clearly distinguishable from the present case however, since the applicable statute in Szczesny made no mention of certified mail and the court’s ruling dealt only with ordinary mail. Ibid. Here, the applicable statute (i.e. N.J.S.A. 54:4-34) specifically requires mailing of the Chapter 91 request by certified mail.
In Towne Oaks, the Appellate Division held that the taxpayer received adequate notice of the Tax Assessor’s Chapter 91 request for information, since the request was sent by both certified and regular mail to the same address, even though the certified mail was returned as unclaimed. The Towne Oaks holding is also distinguishable from the present case since here, the Chapter 91 request for information was sent only by certified mail. Most notably absent in the present case, was the simultaneous mailing by regular mail along with the certified mail.
The issue of whether there can be a presumption of receipt when a statute requires notice by certified mail (as does N.J.S.A. 54:4-34), remains unresolved by our courts and need not be determined here.
“In dealing with the public, government must ‘turn square corners.’ ” F.M.C. Stores Co. v. Morris Plains Bor., 100 N.J. 418, 426, 495 A.2d 1313, 1317 (1985) (citation omitted). Furthermore:
The defendant municipality cannot seek to close the door of tax appeals until it has given property owners fair notice of their obligations in the Chapter 91 requests ____The government must speak in dear and unequivocal language where the consequence of non-compliance is the loss of the right to appeal assessments. [Cassini v. Orange City, 16 N.J.Tax 438, 450-53 (1997).]
A simple examination of the Chapter 91 request documents and attached mailing labels sent to the Taxpayer illustrates that East Orange has not provided him with fair notice of his obligations in clear and unequivocal language as prescribed in Cassini. To the contrary, the court finds the notice to be inconsistent and confusing.
In the mailing label affixed to the Property Identification section (i.e. Part I) of the Income and Expense Form, the Taxpayer’s *332 mailing address of 11 Francis Street, Piscataway, N.J. 08851 corresponds to the Address of Property line of the form. The address of the subject property however, is 186-188 Amherst Street, East Orange, New Jersey, which appears nowhere on the Income and Expense Form. Furthermore, the numbers 491, 40, and 4A that appear on the mailing label are not explained or defined. The facts indicate that the block and lot numbers of the subject property are 491 and 40 respectively, however, that is not evident in clear and unequivocal language from the mailing label affixed to the Income and Expense Form. The number 4A on the mailing label (presumably the building class) has not been identified for the Taxpayer’s benefit. A layperson may find it difficult to ascertain the significance of the unexplained and unidentified numbers haphazardly placed on the label.
The undated explanatory cover letter contains a similar affixed address label that only identifies the Taxpayer’s mailing address as well as the numbers that have subsequently become known to be the block and lot numbers. Here, the unspecified number “4A” is missing. Again, this is inadequate identification of the subject property.
The only reference contained in East Orange’s Chapter 91 mailing to the Taxpayer that could reasonably be interpreted to correspond to the subject property, can be found on the mailing label affixed to the return receipt card (i.e. “186-88 Amherst Street”). The Taxpayer however, does not retain this return receipt card, but rather it is returned to East Orange after a signature of receipt is obtained by the mail carrier. Assuming aguendo that the Taxpayer did in fact accept delivery of the Chapter 91 request as East Orange contends, chances of him having noticed the mailing label in the few seconds he would have had to sign the return receipt card are extremely unlikely. Accordingly, the court finds that even if proper delivery had been made in this case, the Chapter 91 request was defective and the Taxpayer was not provided with fair notice of his obligations in clear and unequivocal language.
The issue of whether proper delivery of the Chapter 91 request to the Taxpayer has been established is equally trouble *333 some for East Orange. As previously noted, the Taxpayer claims that he never received the request for information. East Orange claims that proof of delivery was established from the return receipt card signed with an “X” in the signature block.
“Certified mail service is a service that provides a mailing receipt to the sender and a record of delivery at the office of delivery.” 39 C.F.R. Pt. 3001, Subpt. C, App. A § 941.11. “A delivery record (which includes the signature) is retained by the Postal Service for a specified period of time.” 58 Domestic Mail Manual § 912.1.1[6] (2003). See also 39 C.F.R. § 111.1 (incorporating the Domestic Mail Manual by reference);[7] and Hammond v. City of Paterson, 145 N.J.Super. 452, 456, 368 A.2d 373, 375 (App.Div.1976) (citing the official Mailers Guide published by the United States Postal Service). This delivery record establishes actual receipt of the parcel. In accordance with the 58 Domestic Mail Manual § D042.1.7.b (2003):
The mailpiece may not be opened or given to the recipient before the recipient signs and legibly prints his or her name on the delivery receipt (and return receipt, if applicable) and returns the receipt(s) to the USPS employee.
However, the recipient does not necessarily have to be the addressee. To the contrary, “an addressee’s mail may be delivered *334 to an employee, to a competent member of the addressee’s family, or to any person authorized to represent the addressee.” 58 Domestic Mail Manual, § D042.2.1 (2003).
In the context of certified mail, it is important to note that there is a difference between the delivery receipt (which is maintained by the USPS) and a return receipt (which is returned to the sender). Return receipt service is not automatically part of certified mail service but rather is an optional service. “Return receipt service provides a mailer with evidence of delivery.” 58 Domestic Mail Manual § S915.1.1 (2003). “Return receipt service is available ... when purchased at the time of mailing with ... certified mail.” Id. at § S915.1.2.a (emphasis added). The Legislature, in its construction of N.J.S.A. 54:4-34, did not incorporate the requirement of return receipt in the statute. N.J.S.A. 54:4-34 merely requires that the Tax Assessor’s Chapter 91 request for information be made by certified mail; there is no requirement that the request be made by certified mail return receipt requested.
Since N.J.S.A. 54:4-34 does not require certified mail return receipt requested, a defective return receipt alone (i.e. one devoid of a signature and printed name of recipient) does not necessarily mean that the delivery is defective. More often than not, the utilization of return receipt service along with certified mail service aids in establishing actual receipt. However, when the return receipt is inconclusive as to delivery, the record of delivery maintained by United States Postal Service should be able to establish actual receipt of certified mail, assuming that the requirements of the Domestic Mail Manual with regard to the delivery receipt (§ D042.1.7.b) have been properly followed.
The United States Postal Service provides certified mail delivery information on the Internet at www.usps.com for “[s]ix months from the time of delivery or attempted delivery.” United States Postal Service Website, available at http://www. usps.com/shipping/ trackandconfirm faqs.html[8] (last visited March 23, 2004). Thereafter,
*335 You can purchase a Return Receipt After Mailing from your local post office. This will provide you with a proof of delivery letter that includes the recipients name and a copy of the signature when available. This service is available for 2 years after the time of delivery.

[Ibid.]

See also Pi-Con, Inc. v. A.J. Anderson Const. Co., 435 Mich. 375, 458 N.W.2d. 639, 643 (1990), rev’g 169 Mich.App. 389, 425 N.W.2d 563 (1988), (recognizing that “[cjertified mailing alone does not guarantee the retention of records of delivery, because the United States Postal Service retains such records for only two years.” (Emphasis added.))
The only evidence of receipt of the Chapter 91 request for information before this court is the return receipt marked with an “X” in the signature block. While it is possible that the Taxpayer regularly signs his name with an “X” (although no evidence to that effect has been offered), or that he deliberately signed that way as an attempt to thwart delivery and service, or someone signed on the Taxpayer’s behalf, the return receipt is simply too inconclusive. It is conceivable, particularly considering the placement of the “X” to the far left of the signature block, that it was the mail carrier’s mark to show the recipient where to sign, and not the *336 Taxpayer’s or his agent’s mark evidencing receipt. There is no evidence that East Orange purchased a Return Receipt After Mailing or otherwise sought to confirm receipt through the record of delivery maintained for certified mailings by the United States Postal Service for two years.
The court finds there is insufficient proof to conclude that the Chapter 91 request for information was actually delivered to the Taxpayer since East Orange relies solely upon an inconclusive return receipt that is open to varying interpretations. Accordingly, for all the foregoing reasons, East Orange’s motion to dismiss the Taxpayer’s appeal for failure to comply with the provisions of N.J.S.A. 54:4-34 (Chapter 91) is denied.

 In the Certification of Brígida Caruso, Chief Assistant Assessor for East Orange, she indicates that “In compliance with N.J.S.A. 54:4-34 ('Chapter 91'), it is the practice and policy of the Department of Property Taxation of the City of East Orange to issue to the owners of income producing real properly in the taxing district, a written request of the assessor, made by Certified Mail..." It is clearly discernable from the cover letter sent to the Taxpayer on September 4, 2003, that the Tax Assessor was part of the Department of Property Taxation.

 In a July 14, 2003 letter from the Taxpayer’s attorney to the County Board, that was attached as an exhibit to the reply letter-brief of East Orange’s attorney, the Taxpayer’s attorney argued that "the individual who accepted service of [the] Assessor’s request [was] 'S. Charles [who] is not a representative of the Taxpayer/ownership of the subject property, but rather works in the barber shop located on the 1st floor ..., and has no authority, implied or apparent, to accept mail addressed to the [Taxpayer]...’” East Orange’s attorney contends that this "admission” indicates that the Taxpayer had at least constructive notice of the Chapter 91 request for information. In response, the Taxpayer’s attorney clarified that the reference to S. Charles as the signer of the return receipt with regard to the 2003 tax appeal was an error mistakenly carried over from the 2002 tax appeal of the same property. He further explained that S. Charles "allegedly” signed the return receipt for Chapter 91 request for the 2002 appeal, not the 2003 appeal now in issue. East Orange has not disputed this claim of error. Accordingly, the court is satisfied that an S. Charles did not sign for the September 4, 2002, mailing on behalf of the Taxpayer, and that the identity of *328 the person who hand wrote the "X" on the return receipt for that letter is not known.

 Land $26,500; Improvement $9,200; Total Assessment $35,700 for Tax Year 2003.

 The court noted that, " ‘the assessor shall ... after examination and inquiry, deter mine the full and fair* value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1 [of the pretax year].' ” Westmark Partners, supra, 12 N.J.Tax at 595, citing N.J.S.A. 54:4-23 (emphasis added).

 The court further noted that, “[a]fter determining his October 1 taxable valuation, the tax assessor is [directed to] 'complete the preparation of his *330 assessment list by January 10 following, on which date he shall attend before the county board of taxation and file with the board his complete assessment list .." Westmark Partners, 12 N.J.Tax at 595, citing N.J.S.A. 54:4-35.

 "The Domestic Mail Manual (DMM), revised and published periodically, contains the official rates and standards of the U.S. Postal Service governing mail services ... This book includes all revisions issued since the publication of DMM Issue 58 (dated 8-10-03)." Domestic Mail Manual Transmittal Letter, 58 Domestic Mail Manual (2003). A description of revisions made since the publication of DMM Issue 58 is contained in 58 Domestic Mail Manual § 1010 (2003). The court notes that none of the sections of the DMM cited in this opinion have been revised since the publication of DMM Issue 58.

 39 C.F.R. § 111.1 provides:
Section 552(a) of title 5, U.S.C., relating to the public information requirements of the Administrative Procedure Act, provides in pertinent part that ‘ ' " matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.’ In conformity with that provision, and with 39 U.S.C. section 410(b)(1), and as provided in this part, the U.S. Postal Service hereby incorporates by reference in this part, the Domestic Mail Manual, a looseleaf document published twice each year in January and July, unless otherwise determined by the Postal Service.

 This website is a public information service provided by the United States Postal Service. The court acknowledges the website's disclaimer indicating that *335 "THE POSTAL SERVICE DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION [contained at www.usps.com] IS ACCURATE OR RELI-ABLE____” United States Postal Service Website, available at http://www.usps. com/homearea/docs/ termsofuse/.htm (last visited March 23, 2004). However, the court notes that “modern courts often cite common nonlegal sources, such as general encyclopedias or dictionaries; they have been known to cite such diverse common nonlegal sources as newspapers, songs, poems, books, and movies. As it became acceptable — or at least, not unusual — or cite and rely upon such everyday sources, no one should be surprised that many courts would begin to cite sources found on the emerging resource medium for the lay public, the Internet." Coleen M. Barger, On the Internet, Nobody Knows You’re a Judge; Appellate Courts’ Use of Internet Materials, 4 J. App. Prac. & Process 417, 420-21 (Fall 2002). The court further notes that the website of Oxford English Dictionary [Online] at http://www.oed.com, contains a similar disclaimer as the USPS website. The disclaimer provides in part that “Oxford University Press makes no warranties or representations of any kind concerning the accuracy of the information contained on this web site for any purpose." www.oed.com/general/privacy.html (last visited March 23, 2004). Nevertheless, the Ninth Circuit United States Court of Appeals, in Dils v. Small, 260 F.3d 984 (9th Cir.2001), cited www.oed.com, despite the disclaimer and regardless of the fact that the Oxford English Dictionary was readily available in printed form.