SMALL, P.J.T.C.
In these cases, I find that, despite the fact that a taxpayer claims that its property is owner-occupied and is therefore not required to respond to a tax assessor’s income and expense request authorized by N.J.S.A. 54:4-34 (commonly referred to as “Chapter 91,” L. 1979 c. 91), it must make some response to an assessor’s request. I am barred from considering the taxpayer’s claim of exemption from the reporting requirement if the issue of its obligation to respond to the request is raised for the first time in response to the municipality’s motion to dismiss in the Tax Court. In order to preserve its defense to the municipality’s motion, the taxpayer first must raise its defense by way of a timely response to the original Chapter 91 request. I further find that, as a matter of fact and law, the plaintiff in these cases is the owner of “income producing property.” Thus, even had it timely raised its objections to its having to file the income and expense statement, its objections were not valid.
I.
Defendants, Dover Township (the “Township”) and the Borough of Point Pleasant Beach (the “Borough”), have moved to dismiss plaintiffs complaints for failure to comply with the provisions of Chapter 91 by not responding to the assessors’ written requests for income and expense statements within the forty-five day time limit prescribed by the statute.
On September 15, 2003, the Borough tax assessor mailed, by certified mail, return receipt requested, a request to plaintiff for income and expense information relating to its property in the Borough. The assessor received the return receipt card indicating that the plaintiff had received the certified letter on September 18, 2003. A similar letter was sent to plaintiff by the Township tax assessor on April 14, 2003. Neither assessor received a response to the request from the plaintiff-taxpayer. In neither case did the plaintiff (a) object to the request claiming that it was not required to file an answer nor (b) file a complete or partial response.
The Borough assessor’s letter read, in relevant part:
*577 Please accept this letter as a formal request for a signed and certified Income and Expense Statement for your property for the latest year----
On the reverse side of this letter is a copy of N.J.S.A. 54:4-34, which is also known as Chapter 91 Laws of New Jersey 1979. Under this statute, failure to answer within 45 days of the request for an income statement gives the assessor the right to value the property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value. The law further states that the owner of such income-producing property loses their right to a tax appeal, if an owner fails or refuses to respond to such written request for information.
If the property is owner-operated and does not receive rental income, please indicate Omm Operated in Part 2, # 10 on the front page of the form. Then, just sign and return the Statement.
[Emphasis in original.]
The Township assessor’s letter was similar to the Borough’s letter and read in relevant part:
This request for Income and Expense data is made by Certified Mail-Return Receipt Requested, and your response must be submitted to this office within days from, the date that this letter is received.
In the event that you do not comply with this request, the law provides that you will be precluded from the appeal process regarding the assessment of the property.
If your property is 100% owner occupied and operated, simply state that on the front page of the request form and return the signed form to the assessor’s office. [Emphasis in original.]
A copy of N.J.S.A 54:4-34 was also enclosed. It is undisputed that plaintiff received both requests but neither responded in any manner, nor made any attempt to contact either assessor to object to the requests.
In both cases, the taxpayer filed a timely appeal of its 2004 tax assessment to the Ocean County Board of Taxation, which affirmed the Township’s and the Borough’s assessments.
Plaintiff filed timely appeals of each county board judgment with the Tax Court. On July 27, 2004, the Township filed its motion to dismiss plaintiff’s complaint for failure to comply with Chapter 91. On September 21, 2004, the Borough filed a similar Chapter 91 motion. Plaintiff opposes both motions, claiming that *578 the subject properties are owner-occupied and utilized by a franchisee for the operation of a 7-Eleven Store. It is plaintiffs contention that the franchisee does not pay rent, but rather pays plaintiff a percentage of its gross profits and certain other fees pursuant to the Franchising Agreement. Plaintiff argues the subject premises are owner occupied and are not income-producing property for purposes of Chapter 91.
The defendant municipalities argue that: (a) at least a portion of the payments made by the franchisees to plaintiff must be allocated to rent and therefore, the properties are income-producing; and (b) that the failure to respond in any fashion to the assessors’ Chapter 91 requests preclude plaintiffs appeals from the Ocean County Board of Taxation’s judgments.
II.
Chapter 91 provides that the municipal assessor may make annual demands for income and expense information from taxpayers with income-producing property. N.J.S.A. 54:4-34 provides:
Every owner of real property of the taxing district shall, on written request of the assessor, made by certified mail, render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, and produce his title papers, and he may be examined on oath by the assessor, and if he shall fail or refuse to respond to the written request of the assessor within 45 days of such request, or to testify on oath when required, or shall render a false or fraudulent account, the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall be heard from the assessor’s valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such request or to testify on oath when required, or shall have rendered a false or fraudulent account. The county board of taxation may impose such terms and conditions for furnishing the requested information where it appears that the owner, for good cause shown, could not furnish the information within the required period of time. In making such written request for information pursuant to this section the assessor shall enclose therewith a copy of this section.
There are strict obligations placed on the assessor: (1) the letter must include a copy of the text of the statute; (2) it must be sent by certified mail to the owner of the property; and (3) it must spell out the consequences of failure to comply with the assessor’s demand, namely a bar to the taxpayer’s taking of an appeal from its assessment. N.J.S.A. 54:4-34.
*579 The sanction imposed by the statute is severe. It essentially closes the courthouse door on the taxpayer’s right to appeal an assessment. It has been the subject of numerous reported opinions. Ocean Pines, Ltd. v. Borough of Point Pleasant, 112 N.J. 1, 547 A.2d 691 (1988); ML Plainsboro Ltd. v. Plainsboro Township, 16 N.J.Tax 250 (App.Div.) certif. denied, 149 N.J. 408, 694 A.2d 194 (1997); Tower Center Assoc. v. East Brunswick Tp., 286 N.J.Super. 433, 669 A.2d 829 (App.Div.1996); Cassini v. City of Orange, 16 N.J.Tax 438 (Tax 1997); Monsanto Co. v. Kearny, 8 N.J.Tax 109 (Tax 1986); Terrace View Gardens v. Dover Township, 5 N.J.Tax 469 (Tax 1982), aff'd 5 N.J.Tax 475 (App.Div.), certif. denied, 94 N.J. 559, 468 A.2d 205(1983).
Generally, when a request made by an assessor is defective on its face, taxpayers have been excused from responding to the request, and not barred from contesting assessments made after their refusal to respond. Thus, a non-response has not barred the taxpayer from litigating its assessment when the assessor’s request was made at a time when the forty-five day statutory period within which the taxpayer could respond ended after the statutorily prescribed date (January 10) when the assessor could use the information to file his or her annual assessment. Westmark Partners v. Township of West Deptford, 12 N.J.Tax 591 (Tax 1992) (taxpayer’s failure to respond to assessor’s demand for income and expense statement did not preclude appeal of local property tax assessments to tax court; assessor’s demands were sent to taxpayer after assessor’s determination of correct assessments had been submitted to county board.); Delran Holding Corp. v. Delran Township, 8 N.J.Tax 80 (Tax 1985) (taxpayer’s failure to respond to Chapter 91 request did not require dismissal of assessment appeal when request was not made until after assessor had received a copy of taxpayer’s complaint appealing assessment.)
Similarly, a taxpayer’s failure to respond has not barred appeal of an assessment where: (1) the request did not include the proper version of the text of the statute, SAIJ Realty Inc. v. Kearny, 8 N.J.Tax 191, 197 (Tax 1986); (2) the request came from someone other than the assessor and the name of the assessor had *580 not been invoked in making the request, Tri-Martin Associates II, LLC v. City of Newark, 21 N.J.Tax 253, 259 (Tax 2004); (3) the specific property about which information was sought had not been adequately identified, Green v. East Orange, 21 N.J.Tax 324, 332 (Tax 2004); and (4) the information demanded was for a period of time that was not yet over at the time the request was made. Cassini v. City of Orange, supra, 16 N.J.Tax at 452-53.
Taxpayers have also avoided dismissal of an appeal of their assessment, despite their failure to provide income and expense information, by replying within the forty-five day time limit and indicating that the property was not income producing property. Monsanto Co. v. Kearny, supra, 8 N.J.Tax at 111; ML Plains-boro Ltd., supra, 16 N.J.Tax at 260. In both cases, the taxpayer mailed a letter to the assessor in response to the request for income and expense information, indicating that the property was owner-occupied, and thus, exempt from the obligation to respond.
A taxpayer may not ignore or refuse to respond to a request which is in conformity with the statute and wait until a motion to dismiss is filed in the Tax Court to raise its defense to not having responded on the grounds that the assessed property is not income producing. SKG Realty Corp. v. Wall Township, 8 N.J.Tax, 209, 211 (App.Div.1985); Tower Center Assocs., supra, 286 N.J.Super. at 438-39, 669 A.2d 829. These Appellate Division determinations make clear that even if the taxpayer is justified in not providing income and expense information to the municipality, it must raise that objection within the statutory forty-five days of the request for the information.
The courts have held that if a taxpayer stands by and does nothing in response to an income and expense request and then for the first time explains its reasons for not responding to the request at the time that the motion to dismiss is filed, the court will not entertain that defense. In SKG Realty, supra, the taxpayer received a Chapter 91 request from the assessor for income information and failed to respond. SKG Realty, supra, 8 N.J.Tax at 211. The plaintiff was a wholly-owned subsidiary of a parent corporation, which had another subsidiary, a division of *581 which was the single tenant of the property subject to the appeal. In opposition to the township’s motion to dismiss, the plaintiff contended that the sole purpose of its ownership of the property was to house the sister corporation’s division and no real economic rents had been set. Any rental payments and responsibilities for payment of expenses had been established for the sole purpose of accommodating the inter-subsidiary accounting needs of the corporations.
In affirming the Tax Court’s dismissal of plaintiffs appeal, the Appellate Division wrote:
The purpose of the provision outlawing appeals by non-responding owners is to encourage compliance with the accounting requirement [of Chapter 91].
Where real property is owned by one entity and occupied by a related entity, the manner in which they order their fiscal relationship may reduce the usefulness of the income accounting required by the statute. But, some or all of it may have utility, and it is up to the assessor and not the taxpayer to decide whether to consider the information furnished.
[SKG Realty v. Wall Tp., supra, 8 N.J.Tax at 211].
Similarly, in Tower Center Associates, the taxpayer failed to respond to the assessor’s Chapter 91 request, and then tried to claim “good cause” based on the illegality of the scope of the request. In rejecting the taxpayer’s argument, the Appellate Division emphasized that:
The taxpayer should undoubtedly respond at least to that part of the request not deemed improper ....
We hold only that the taxpayer must take some form of action to challenge the request within the forty-five day statutory time limit, and to put the municipality on notice of its contention____[T]he taxpayer cannot just sit by and do nothing until the assessment is finalized ... and thereafter seek to appeal the assessment by plenary review.
Where the request is thought not to be “legitimate,” in whole or in part, the taxpayer must do something to assert that contention before the assessment is imposed to avoid the statutory bar to appeal embodied in [Chapter 91J.
[Tower Ctr. Assocs., supra, 286 N.J.Super. at 438-39, 669 A.2d 829].
In TMC Properties v. Wharton Borough, 15 N.J.Tax 455 (Tax 1996), the court provided a clear analysis of the ease law concerning the repercussions of a taxpayer’s failure to respond to an assessor’s request, and established the sufficiency of the tax *582 payer’s response as a threshold issue. TMC Properties, supra, 15 N.J.Tax at 463. Specifically, it identified a two-step analysis that must be employed when deciding whether to grant a municipality’s motion to dismiss a taxpayer’s complaint for failure to respond to a Chapter 91 request. Ibid.
The first step of the analysis requires the taxpayer to show that the response, if any, to the assessor’s request was sufficient: “The first step is a determination of whether the taxpayer made a sufficient ‘response’ to the assessor’s request within the statutory forty-five day period.” Ibid. In order for a response, other than one supplying the requested information, to be sufficient the response “must be made within the forty-five day time period and must communicate to the assessor, in reasonable detail, a plausible basis for the taxpayer’s inability to furnish the requested information within such time period.” Ibid. Upon a showing that the response was sufficient, a taxpayer then must be able to establish that there was “good cause” for failing to provide the requested information. This Court defined “good cause” as a demonstration that the taxpayer “could not” answer the assessor’s request within the statutorily mandated time limit. Ibid.
If the taxpayer fails to satisfy the threshold requirement by a showing that its response to the request was at a minimum sufficient, the court will not consider whether there was good cause for not providing the requested information: “This second step is reached, however, only if the county board or the Tax Court finds that the taxpayer made a sufficient response within the forty-five day period. TMC Properties, supra, 15 N.J.Tax at 463.
In Ocean Pines, Ltd. v. Borough of Point Pleasant, our Supreme Court dismissed the taxpayer’s appeal, finding that “[a] plaintiffs failure to respond in any fashion to the assessor’s request precluded plaintiff from asserting a “good cause” claim before the board.” Ocean Pines, Ltd. v. Borough of Point Pleasant, 112 N.J. 1, 9, 547 A.2d 691 (1988).
It is apparent that the legal doctrine developed by the relevant ease law does not allow a taxpayer to completely ignore *583 an assessor’s request, but rather, at a minimum requires some form of response. If the taxpayer fails to comply, it is barred from showing “good cause” for its failure to respond and its appeal will be dismissed subject only to an Ocean Pines reasonableness hearing. Ocean Pines, Ltd. v. Point Pleasant Borough, supra, 112 N.J. at 12, 547 A.2d 691.
However, the assessor’s letter must also be explicit in the information that it seeks. Summerton Shopping Plaza v. Manalapan Township, 15 N.J.Tax 173, 177 (App.Div.1995) (finding that the assessor’s request of the taxpayer must be clear).[1] The taxpayer in ML Plainsboro received income and expense requests from the municipal assessor. In response to the request, the very next day the taxpayer sent a letter to the assessor stating that the subject properties were owner-occupied and therefore, not income producing. In reversing the Tax Court’s dismissal of the taxpayer’s appeal for failure to comply with the assessor’s Chapter 91 request, the Appellate Division stated:
[I]n determining whether a taxpayer is barred from appealing an assessment because it failed to respond adequately to a tax assessor’s request for information pursuant to N.J.S.A. 54:4-34, the county board of taxation or the Tax Court must decide not simply whether the taxpayer’s property is “income producing” but also whether the assessor’s request would be understood by the average owner of an income producing property to require disclosure of the information which the taxpayer had allegedly withheld.
[ML Plainsboro, supra, 16 N.J.Tax at 256-57].
Perhaps in response to the opinions in the situation discussed above, many of the assessor’s letters now explicitly direct the taxpayers to affirmatively indicate if the property is owner-occupied. That was the situation in the subject cases. The letters addressed to Southland explicitly, and in bold face, italicized type in the Borough’s letter, instructed the taxpayer that if the property was owner-occupied, that fact was to be indicated on the form that was to be returned to the assessors’ offices. Instead of responding to the requests that the properties were owner-occu *584 pied (not income producing), as the taxpayers did in Monsanto, supra, and ML Plainsboro, supra, Southland ignored two certified letters sent return receipt requested, which letters spelled out the consequences of not responding to the requests. The letters provided specific instructions for responding to the requests if the properties were, as plaintiff argues, owner-occupied (not income producing).
The history of the statute and relevant case law make it clear that it is necessary to impose the harsh sanction of loss of the right to appeal in order to get timely and responsive answers to the assessor. Terrace View Gardens, supra, 5 N.J.Tax at 472. The Legislature intended the statute to “provide for an orderly procedure” in the assessment of properties. Carriage Four Associates v. Teaneck Township, 13 N.J.Tax 172, 177 (Tax 1993). See also, Senate Revenue Finance and Appropriations Committee, Statement to S. 309 (1978). Although one might quarrel with or find that the imposed sanction is too harsh, the Legislature enacted this penalty with a purpose, and this court and the Appellate Division have consistently held that refusals of a taxpayer to comply with an unambiguous request in compliance with the statute will result in the taxpayer’s loss of its right to appeal its assessment.
In furtherance of the legislative purpose to provide an orderly procedure, the Appellate Division has strictly construed the statute and has not permitted a taxpayer to assert the defense that the property was owner-occupied in opposition to a motion to dismiss, unless that defense was first raised in response to and within forty-five days of the assessor’s-original request. See ML Plainsboro, supra, 16 N.J.Tax at 260, and Monsanto, supra, 8 N.J.Tax at 111.
Each tax appeal applies only for that year’s assessment. Thus, failure to respond to a request in one year will only limit the right to that year’s appeal. Appeals in future years will not be barred if a timely response to the request in those years is made. Further, a taxpayer that has failed to respond to an assessor’s request is not without some relief from the harsh consequences of the *585 statute. Our Supreme Court in Ocean Pines, Ltd. v. Borough of Point Pleasant, supra, 112 N.J. at 12, 547 A.2d 6 91, provided for the limited remedy of a reasonableness hearing to protect such a taxpayer from an egregious over-assessment of the subject property. For example, a taxpayer would be protected from the imposition of an excessively high assessment by an unscrupulous assessor who had full knowledge that the taxpayer had not responded to a proper Chapter 91 request and would be barred from appealing.
The established rule of law is clear. A taxpayer must respond sufficiently to each Chapter 91 request, or face dismissal of its appeal of the assessment of that property for that year. The taxpayer will be excused from answering an assessor’s request only in the event that the request is facially defective. Even under such circumstances, the taxpayer would be well advised to respond. TMC Properties, supra, 15 N.J.Tax at 463; Tower Center Assocs., supra, 286 N.J.Super. at 433, 669 A.2d 829.
If the subject property is in fact owner-occupied, and not income producing, a taxpayer must so inform the assessor at the time of the initial request for income and expense information. Only if such a timely response is made will the court inquire into whether, in fact, the property is owner-occupied. Thus in ML Plainsboro, where the taxpayer responded to the assessor’s request with a letter stating that the property was owner occupied, the trial court was able to address the second tier of a Chapter 91 analysis, that is, whether there was “good cause” for failure to provide the information, and find that the property was not owner-occupied. ML Plainsboro, supra, 16 N.J.Tax at 257. In reversing the trial court’s holding, the Appellate Division made a contrary analysis of the facts and law, however, it could not have reached the merits of the case had the taxpayer not responded to the original request. Ibid.
TMC Properties also warns the taxpayer that a written response to the assessor’s request is required if a taxpayer intends to utilize the defense that the property is owner-occupied in response to a motion to dismiss for failure to comply with Chapter *586 91 at the subsequent appeal of the assessment. TMC Properties, supra, 15 N.J.Tax at 463. A taxpayer, having failed to make a timely response to an assessor’s demand for income and expense information, is no longer free to raise the defense that its property is owner-occupied and the court will make no further inquiry into that fact.
Thus, having found that the plaintiff in these cases failed to object timely to the assessors’ Chapter 91 requests, its appeals will be limited to the so-called reasonableness hearing prescribed by Ocean Pines, supra.
III.
The plaintiff has submitted documentation of its relationship to the property in justification of its refusal to respond to the assessor’s requests. I have reviewed those submissions. Even assuming that Southland had complied with the assessors’ Chapter 91 requests, I would still grant defendants’ motions because the subject property is “income producing” within the meaning of the statute, in part because the properties are not owner-occupied, and in part because plaintiff has failed to demonstrate good cause for its failure to respond to the assessors’ Chapter 91 requests.
Plaintiff, Southland, owns the subject properties. Both properties are occupied by individuals or entities that hold franchises from Southland to operate 7-Eleven convenience stores. The documents describing the relationship between Southland and the holders of the franchises are lengthy and complex and appear to create a relationship that may be different from other franchise agreements. In relevant part, in return for its franchise, the franchisee is given a right to occupy the property owned by the franchisor. Although a separate lease payment is not made, the franchisee makes several payments to the franchisor. The major payment is a so-called “7-Eleven Charge” of 50% of the Gross Profit (defined as Net Sales less Cost of Goods Sold). In return for that payment, the franchisee is entitled to, and obliged to, lease the store from Southland.
*587 ‘You do not buy the land, building or equipment where the store is located. We [Southland] obtain the land, building, equipment, leasehold improvements, fixtures, furnishings and decorating costs at our expense, and you must lease it from us----
[p. 19 Franchise Offering Circular — emphasis added]

You must lease the store’s land, building and, equipment from us.

[p. 20 Franchise Offering Circular — emphasis added]
You must lease the store's land, building and equipment from, us under the franchise agreement. Part of the continuing royalty you pay us, the 7-Eleven Charge, pays for your lease of the store’s land, buildings and equipment from us....
[p. 28 Franchise Offering Circular — emphasis added]
Section 8 of the Franchise Agreement is entitled “Lease”; subsection (a) is captioned “Lease of Store and 7-EIeven equipment.”
Thus, it is clear that Southland does not occupy the individual stores — they are not owner-occupied. It is not clear from the record before me what part of the 7-Eleven Charge is attributable to the lease of the real estate. Nevertheless, the determination of whether the information might be useful to the assessors is for the assessors, and not for Southland, to decide. SKG Realty v. Wall Tp., supra, 8 N.J.Tax at 211. Furthermore, Southland nowhere states that it does not have expense information about its ownership of each individual store. Once again, no matter how it maintains that information, it might have been useful to the assessors and should have been supplied to them.
I find that the property is not owner-occupied and is income-producing. The fact that the record of income and expenses might not be collected and maintained in traditional accounting formats for landlords and tenants is not to say that it would not have been useful to the assessors. Southland has not asserted that it does not maintain records in more traditional formats. It has only asserted that the payments from the tenant (the franchisee) to the landlord (Southland) were aggregated with other obligations into the “7-Eleven Charge” for purposes of payment. And it is Southland, the plaintiff, that has specifically, repeatedly, and unequivocally insisted on the use of the terms “tenant,” *588 “landlord,” and “lease” in the Franchising Offering Circular and the Franchise Agreement.
Plaintiff relies on the holding in Great Adventure, Inc. v. Jackson Township, 10 N.J.Tax 230 (App.Div.1988) to argue that the phrase “income-producing property” applies only to property that generates rental income, and since the subject property does not produce “rental” income, it therefore is owner-occupied. However, plaintiffs reliance on the holding in Great Adventure is misplaced. In that case, the court found that a patron’s payment of an admission fee to an amusement park was insufficient to render the park income producing property.
“[T]he phrase ‘income producing property must be construed as a term of art in accordance with the understanding commonly ascribed to it by the business, investment and real estate community ... [I]n the real estate appraisal field, the term income-producing is generally limited to property producing rental income ----The fee is not paid by the patron for the use of the property in any tenancy sense but rather for the entertainment package offered.”
[Great Adventure, supra, 10 N.J.Tax at 232-34.]
The precedent of Great Adventure actually undermines the plaintiffs argument. First, the Franchise Agreement between Southland and its franchisees explicitly creates a tenancy in real estate for the franchisee. The Agreement itself has a section entitled “Lease” (Part 8 of the Franchise Agreement.), which states “you [franchisee] and we [Southland] intend to create only a landlord-tenant/lessor-lessee relationship with respect to the Lease provided herein. If you breach this Agreement, then we will be entitled ... to invoke all judicial and other rights and remedies available to a landlord or lessor____”
Second, in considering the language of the Franchise Agreement, it is disingenuous for the plaintiff to argue that there is no tenancy relationship. The plaintiff further argues that any monies paid are not rent, but rather a percentage of its gross profits and certain other fees pursuant to the Franchising Agreement. This contention is also undermined by the language in the Franchise Agreement, which states: “you [franchisee] must lease the store’s land, building and equipment from us under the franchise agreement. Part of the continuing royalty that you pay us, the 7-Eleven Charge, pays for your lease of the store’s land, buildiny and equipment....” [Emphasis in original]. This language ex *589 plicitly states that a portion of the “royalty” paid by the franchisee to Southland is in consideration for the lease of the store’s land and buildings, and therefore, is in essence, rent for the use of the property. Therefore, unlike the taxpayer in Great Adventure, Southland receives rental payments in connection with a tenancy in land.
The circumstances in Rolling Hills of Hunterdon LP v. Clinton Township, 15 N.J.Tax 364 (Tax 1995) are similar to the case at hand. In that case, a nursing home tried to argue that fees paid by the patients to the home were for services and not a tenancy in real estate. In finding that the nursing home was income-producing, the court noted that the patients paid not only for the nursing care, but also for lodging. Rolling Hills of Hunterdon v. Clinton Township, supra, 15 N.J.Tax at 367; see also, Cascade Corp. v. Township of Middle, 323 N.J.Super. 184, 186, 732 A.2d 564 (App.Div.1999), certif. denied, 163 N.J. 11, 746 A.2d 457 (2000).
The distinction drawn by the courts in defining income-producing property for purposes of Chapter 91 is whether the fee paid to the owner of land by tenants or patrons is for the continuous and exclusive use of a specific portion of the land and buildings, in the traditional sense of a tenancy, or for the brief right to enter the land and buildings with others on a non-exclusive basis, more akin to a license. If the owner is paid for access to a property to which others have access, courts have found the property not income-producing. Great Adventure, supra, 10 N.J.Tax at 233-34. If, however, payment to the owner is for continuous and exclusive use of a portion or all of the property, such as the rental of a room in a nursing home, then the courts have found that the property is income-producing for purposes of Chapter 91. Rolling Hills, supra, 15 N.J.Tax at 367.
Southland, like the property owner in Rolling Hills, receives money from its franchisees for the continuous and exclusive use of its real estate. A tenancy was created and the money received is, at least in part, rental income and therefore, the subject property is income producing for purposes of Chapter 91.
Southland, the plaintiff in each case, has chosen to arrange its relationship with the franchisees as one between landlord and *590 tenant, lessor and lessee. It cannot be heard to argue that because the method by which the rent is calculated, and the fact that it is aggregated with other obligations of the tenant to the landlord, changes the nature of that relationship. General Trading Co. v. Director, Div. of Taxation, 83 N.J. 122, 136-38, 416 A.2d 37 (1980).
IV.
In summary, plaintiffs failure to respond or object to the assessors’ initial requests within the forty-five day statutory time limit now bars its defenses that the properties are not income producing for purposes of Chapter 91. Even if plaintiff had complied with the requirements of the statute by objecting to its obligation to respond, it has failed to prove that the properties are owner-occupied and are not “income producing,” and therefore, would not be able to show “good cause” for its failure to respond adequately to the assessors’ requests.
Defendants’ motions are granted. Plaintiffs challenge to the assessments will be limited to reasonableness hearings as specified in Ocean Pines, supra. If plaintiff desires such hearings, it must notify the court and the municipalities within thirty days.

 I explicitly do not address the outcome of a case in which the assessor has either purposefully or inadvertently addressed Chapter 91 requests to property which the assessor has no basis to consider to be income-producing.