NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

```
-------------------------------------------------------x
RATAN AC LLC,                        :
                                     :   TAX COURT OF NEW JERSEY
          Plaintiff,                 :   DOCKET NO:  000923-2023
                                     :
     v.                              :
                                     :
CITY OF ABSECON,                     :
                                     :
          Defendant.                 :
                                     :
-------------------------------------------------------x
```

Decided:  January 18, 2024.

Jennifer Robin Jacobus for plaintiff (Jacobus & Associates, LLC).

Kyle D. Weinberg for defendant (Blaney, Donohue & Weinberg, PC).

CIMINO, J.T.C.

## I.    INTRODUCTION

Certified mail is required for service of a Chapter 91 request for property income information.  A tax appeal is barred for failing to respond to the request. When a request is not handled in accordance with certified mail standards, the appeal can go forward.

The Absecon City Tax Assessor sent a Chapter 91 request seeking income information for taxpayer's Absecon property via regular mail on June 15, 2022, without any response.  On July 27, 2022, the Assessor resent the Chapter 91 request

-1-

directing delivery as certified mail. A service of the United States Postal Service, certified mail confirms delivery with a signature and alerts the recipient of the importance of the correspondence. The request was sent to the taxpayer's business address of 2600 Tonnelle Avenue, North Bergen, New Jersey 07047. The electronic tracking information provided by the Postal Service indicates delivery on July 30, 2022. However, the green return receipt signature card was not returned to the Assessor. The taxpayer asserts it did not receive either the regular or certified mail. Further inquiry of the Postal Service for the delivery receipt revealed a signature of "2600" appearing twice.[1]

The municipality moves to limit the taxpayer's appeal for failure to comply with the Chapter 91 request. The taxpayer opposes the motion. Both parties waive oral argument.

II.     WHAT IS CHAPTER 91?

Taxpayers in New Jersey have long been required to "account" for their real property. See, e.g., Acts of the Gen. A. of the Province of N.J. ch. 111, § 4 (John Kinsey 1732); L. 1798, c. 805, § 1; Rev. 1846 tit. 35, ch. 1, § 1; L. 1903, c. 208, § 8; L. 1918, c. 236, § 403; R.S. 54:4-34 (1937). In 1960, this accounting was expanded to explicitly include income generated. L. 1960, c. 51, § 29. By gathering and

---

[1]  The typed address accompanying the "2600" signature indicated a slightly different address adding a "STE 1", generally interpreted to mean suite 1, to the street address. See Domestic Mail Manual § 602.1.4.2(e).

analyzing income information, an assessor should be able to reach more accurate assessments.

As the statute existed prior to 1979, the taxpayer had no incentive to provide information. "[T]he property owner [was] not subject to any penalty for not disclosing property income information." S. Revenue, Fin. & Appropriations Comm. Statement to S. 309 (Jan. 26, 1978). The Legislature had a "problem" with a "property owner . . . free to appeal the assessment, notwithstanding his refusal to provide information which would . . . affect[] the valuation, and, perhaps, avoid[] the appeal from the assessment." Ibid. "Further . . . the assessor [had] no access to information on which the appellant [was] basing his appeal and thus the assessor [was] unprepared to testify in argument to the appellant's representations." Ibid. If a taxpayer could withhold information until the time of appeal, the assessor would be "required either to prepare a second valuation of the property – a tremendous waste of valuable time and resources – or to defend the original valuation on the taxpayer's appeal." Ocean Pines, Ltd. v. Borough of Point Pleasant, 112 N.J. 1, 7 (1988).

To remedy this problem, Chapter 91 was adopted in 1979 to limit a taxpayer's right to appeal when a request for income information is ignored. L. 1979, c. 91.

In relevant part, N.J.S.A. 54:4-34, as amended by Chapter 91, now reads:

> Every owner of real property of the taxing district shall, on written request of the assessor, made by certified mail,

render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, . . . and if he shall fail or refuse to respond to the written request of the assessor within 45 days of such request, . . . the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall be heard from the assessor's valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such request . . . . In making such written request for information pursuant to this section the assessor shall enclose therewith a copy of this section.

[N.J.S.A. 54:4-34 (emphasis added).]

The assessor has three obligations when sending a Chapter 91 request, namely, "(1) the letter must include a copy of the text of the statute; (2) it must be sent by certified mail to the owner of the property; and (3) it must spell out the consequences of failure to comply with the assessor's demand, namely a bar to the taxpayer's taking of an appeal from its assessment." [2] Southland Corp. v. Township of Dover, 21 N.J. Tax 573, 578 (Tax 2004). See also Thirty Mazel LLC v. City of East Orange, 24 N.J. Tax 357, 362 (Tax 2009); Fairfield Dev. v. Borough of Totawa, 27 N.J. Tax 306, 308 (Tax 2013).

---

[2] As to spelling out the consequences, there is some disagreement. Town of Phillipsburg v. ME Realty, LLC, 26 N.J. Tax 57, 69 n.11 (Tax 2011); James-Dale Enters., Inc. v. Township of Berkeley Heights, 26 N.J. Tax 117, 124-25 (Tax 2011); Pisani v. Township of Wayne, 13 N.J. Tax 412, 414-15 (Tax 1993).

If the taxpayer fails to respond to a municipality's written request for information within forty-five days, an appeal "is limited in its scope to the reasonableness of the valuation based upon the data available to the assessor . . . . Encompassed within this inquiry are (1) the reasonableness of the underlying data used by the assessor, and (2) the reasonableness of the methodology used by the assessor in arriving at the valuation." Ocean Pines, 112 N.J. at 11. The proceeding is thus limited to what is commonly referred to as a reasonableness hearing.

"A reasonableness hearing . . . does not include plenary proofs as to the value of the property under appeal but only proofs as to whether the assessment imposed by the assessor was reasonable 'in light of the data available to the assessor at the time of valuation.'" Lucent Technologies, Inc. v. Township of Berkeley Heights, 24 N.J. Tax 297, 308 (Tax 2008) (quoting Ocean Pines, 112 N.J. at 11). "[T]he taxpayer is precluded on appeal from expanding the record beyond the information available to the assessor at the time of valuation. The property's financial information, expert opinion as to value, comparable sales not used by the assessor, or any other potential evidence that could otherwise have been available, had the Chapter 91 request been timely answered, is barred." H.J. Bailey Co. v. Township of Neptune, 399 N.J. Super. 381, 387, 24 N.J. Tax 268, 274 (App. Div. 2008) (citations omitted). See also Ocean Pines, 112 N.J. at 11 ("in light of the data available to the assessor"). Since a reasonableness hearing is "sharply limited in both its substantive and procedural

aspects," it "may be disposed . . . in summary fashion, without the taking of testimony." Ocean Pines, 112 N.J. at 11, 12. With these limitations, a taxpayer faces a significant hurdle overcoming the presumption of correctness which attaches to every assessment. Pantasote Co. v. City of Passaic, 100 N.J. 408, 412 (1985) (presumption); Clinton Fountain Motel, L.P. v. Township of Clinton, 18 N.J. Tax 486, 488 (App. Div. 1999) (burden). There is little doubt a reasonableness hearing is something less than the plenary hearing guaranteed in the normal course of filing a tax court complaint. Being limited to a reasonableness hearing "essentially closes the courthouse door on the taxpayer's right to appeal an assessment." Southland, 21 N.J. Tax at 579.

The provisions of Chapter 91 are read narrowly and strictly construed against the municipality due to the severity of consequence faced by the taxpayer. The potential "limitation on a taxpayer's appeal rights is material, substantial, and significant. As a result, our courts have been reluctant to grant Chapter 91 motions unless a municipality can demonstrate strict compliance by the assessor with the letter and purpose of the statute." J & J Realty Co. v. Township of Wayne, 22 N.J. Tax 157, 163-64 (Tax 2005) (citing numerous other decisions).

III.    WHAT IS CERTIFIED MAIL?

Certified mail is a product of the United States Postal Service that provides signed proof of delivery. [3]  Green v. City of East Orange, 21 N.J. Tax 324, 333 (Tax 2004).  Domestic Mail Manual (DMM) § 503.3.1.1 (2023).  See also 39 C.F.R. § 111.1 (incorporating DMM by reference into the Code of Federal Regulations); Postal Service Manual (PSM) § 168.1 (1978) (manual in effect at time of enactment of Chapter 91); 39 C.F.R. § 111.1 (1978) (incorporating PSM by reference into Code of Federal Regulations).  See also Ravenscroft Homeowners Assoc., Inc. v. Derroisne, 473 N.J. Super. 278, 281 (Law Div. 2021) (discussing incorporation by reference of DMM into regulations).  Contrast this with a certificate of mailing, another product of the United States Postal Service that provides proof of mailing, but not proof of delivery.  DMM § 503.5.1.1.  See also PSM § 165.1.[4]

---

[3]  Certified mail can also provide proof of mailing if a sender's receipt is requested by presentation to a U.S. Postal Service employee.  DMM § 503.3.2.1(d); PSM § 168.44(d).  See also N.J.S.A. 54:49-3.1(a) (accepting certified mail sender's receipt as proof of mailing of tax return).

[4]  A certificate of mailing as a proof of mailing was not mentioned in the New Jersey statutes until 1999.  L. 1999, c. 340, § 2.  Compare 1959 Cal. Stat. ch. 638, § 2; 1967 Minn. Laws ch. 463, § 5; 1967 Haw. Sess. Laws act 271, § 1; 1968 N.Y. Laws ch. 30, § 3; 1969 Ill. Laws act 76-1111, § 1; 1969 Tenn. Pub. Acts ch. 202, § 2; 1969 N.H. Laws ch. 359, § 2; 1969 Miss. Laws ch. 54, § 10; 1969 Ind. Acts ch. 319, § 2; 1969 Me. Laws ch. 182; 1971 Mont. Laws ch. 369, § 12; 1971 Mo. Laws ch. 665, § 142.10; 1972 Ariz. Sess. Laws ch. 157, § 3.

Prior to 1955, a signed proof of delivery was obtained by sending correspondence via registered mail, a service available since 1855. Pub. L. No. 33-173, § 3, 10 Stat. 641, 642 (1855). However, this type of service is expensive and slow since it is handled outside the normal mail stream with a detailed chain of custody and additional security.[5] DMM § 503.2.1.1 (chain of custody). To reduce the time and cost entailed by using registered mail, the Postmaster General introduced certified mail service in 1955. New Postal Service, N.Y. Times, Apr. 27, 1955, at 34. With certified mail, a signed proof of delivery is still obtained, but the mail moves through the regular mail stream, thus reducing time and cost. DMM § 503.3.1.1 (in regular mail stream); DMM app. 3 (comparison of costs). Shortly after introduction, many states including New Jersey amended their statutes to provide whenever registered mail is required, certified mail would suffice. N.J.S.A. 1:1-2; L. 1955 c. 226, § 1; 1955 Cal. Stat. ch. 1668, § 1; 1955 Ala. Laws no. 411, § 1; 1955 Ohio Laws 1164; 1955 S.C. Acts no. 234, § 69; 1955 N.H. Laws ch. 242, § 1; 1955 Wis. Sess. Laws ch. 448, §§ 1, 2; 1955 Conn. Pub. Acts no. 22, § 1; 1955 Mass. Acts ch. 683; 1956 Ariz. Sess. Laws ch. 30, § 1; 1956 Mich. Pub. Acts no. 147.

The procedures for delivery of registered mail and certified mail are the same. DMM § 508.1.1.7. The current procedure is the same as when Chapter 91 was

---

[5] Registered mail is so secure that certain classified documents with the marking of "secret" can be sent domestically via this service. 32 C.F.R. § 2001.46(c)(2).

enacted in 1979. See PSM §§ 168.51, 161.41. Before physically accepting a certified letter, the recipient can view the sender's name and address so long as the letter is held by a Postal Service employee. DMM § 508.1.1.7(a); PSM §§ 161.41, 168.51. The letter may not be opened or given to the recipient before the recipient signs, and the signatory's name is legibly printed upon the applicable form, label or data collection device.[6] DMM § 508.1.1.7(b); PSM §§ 161.41, 168.51. See also 22429 Postal Bulletin 42 (Nov. 26, 2015) (amendments to Handbook M-41 allowing signature on data collection device); 39 C.F.R. § 211.2(a)(3) (handbooks as regulations). A record of the delivery which includes the recipient's signature is maintained by the Postal Service. DMM § 503.3.1.1; PSM § 168.65. While basic certified mail only has a signed delivery receipt, a sender can request a return receipt (either a paper green card or electronic) as an extra service for an additional fee. DMM § 503.3.1.1. See also PSM § 168.44(b).[7] [8]

To be clear, a return receipt is an optional item that is in addition to the delivery receipt. DMM §§ 503.6.1.1, 503.1.4.1; PSM § 165.241(a). As noted by

---

[6] In addition, a Postal Service employee can request an acceptable form of identification. DMM §508.1.1.7(c); PSM §§ 161.41, 168.51.

[7] For the electronic return receipt, the signature captured for the delivery receipt is used to generate the electronic return receipt. See 22137 Postal Bulletin 43 (Sept. 16, 2004).

[8] The return receipt can also provide the recipient's actual delivery address. DMM § 503.6.1.1; PSM § 165.241(a).

Judge Bianco in Green, "[i]n the context of certified mail, it is important to note that there is a difference between the delivery receipt (which is maintained by the USPS) and a return receipt (which is returned to the sender)." Green, 21 N.J. Tax at 334. See also Columbus Prop. Inc. v. ISKS Realty Corp., 621 N.Y. Supp. 2d 277, 279 (N.Y. Civ. Ct. 1994). The bottom line is certified mail, whether a return receipt is requested or not, requires a signature.[9]

IV. AS APPLIED TO THIS CASE

A Chapter 91 request for income information was first sent regular mail with no response. Apparently realizing insufficient service for purposes of invoking Chapter 91, the assessor resent the request as certified mail on July 27, 2022. According to the Postal Service records, it was delivered to an individual at 2600 Tonnelle Avenue, Suite 1, North Bergen, New Jersey 07047 on July 30, 2022. The taxpayer denies receipt of both the certified request as well as the previously mailed regular mail request.[10] No return receipt green card was returned by the Postal

---

[9] If no one is available to sign, notice is provided there is correspondence awaiting a signature. DMM § 508.1.1.7(f); PSM §§ 161.44, 168.51.

[10] In Green, the return receipt card was not signed. 21 N.J. Tax at 333. This court suggested that the municipality could have attempted to obtain a copy of the delivery receipt to see if it was signed. Id. at 336. This court also noted that while Chapter 91 does not require the purchase of a return receipt, "the utilization of return receipt service along with certified mail service aids in establishing actual receipt." Id. at 334. This is critical when the Postal Service no longer has the delivery receipt. Postal Operations Manual § 813.24 (2-year retention); 39 C.F.R. § 211.2(a)(2) (manual as regulation).

Service.  The delivery receipt on file with the Postal Service indicates "2600" written twice.  This does not constitute the signature and printed name of the recipient as required by Postal Service regulations.  See DMM § 508.1.1.7(b); PSM §§ 161.41, 168.51.

A letter sent certified mail serves two purposes.  First, it provides proof of delivery by obtaining the signature of the recipient.  Second, by signing for the letter, the recipient is put on notice of something important requiring immediate attention.  The Legislature on many occasions mandated certified mail for notices having significant impact.  See, e.g., N.J.S.A. 54:50-6.1 (certain tax assessments); N.J.S.A. 40:55D-12 (notice of zoning application to adjoining property owners); N.J.S.A. 2A:18-61.2 (certain eviction notices); N.J.S.A. 39:3-40.3 (notice by municipality of sale of impounded vehicle).

The act of signing (or being asked to sign) drives home the point the recipient will be held accountable for failing to act, or at the very least cannot be heard to complain if an adverse action occurs.  "[I]t is common sense that an individual would take special notice of a communication that required his signature upon receipt."  First Am. Bank of Md. v. Shivers, 629 A.2d 1334, 1343-44 (Md. Ct. Spec. App. 1993).  "A written document, particularly one sent by certified mail, conveys a message that the contents of the document are important."  Harrison v. Employment

Appeal Bd., 659 N.W.2d 581, 587 (Iowa 2003). The recipient is likely to "more deliberately reflect on his options and the ramifications of his decision." Ibid.

There is no proof of a signature request alerting the taxpayer a significant legal notice was awaiting its attention. All we know is someone wrote "2600" two times and the record from the post office asserting the certified letter was left with an individual at 2600 Tonnelle Avenue, Suite 1. The municipality relies upon the tracking information of the Postal Service. However, certified mail has always required more than mere delivery. Certified mail is more than first class mail with tracking.[11] A signature along with the name of the recipient establishing to whom the letter was delivered is required. DMM § 508.1.1.7(b); PSM §§ 161.41, 168.51. Requiring a signature serves an important benefit to both parties. For the sender, it proves delivery. For the recipient, it raises awareness of the potential impact of the correspondence.

"Certified mail" is the technical name for signature verified delivery service provided by the Postal Service. "[T]echnical terms, or terms of art, having a special or accepted meaning in the law, shall be construed in accordance with that meaning." Lee v. First Union Bank, 199 N.J. 251, 258 (2009). See also N.J.S.A. 1:1-1. It is presumed at the time of adoption of Chapter 91, the Legislature was familiar with

---

[11] Tracking without a signature is not available for first class mail. It is available for other mail such as priority mail. DMM § 503.1.4.1.

what "certified mail" entailed. Both then and now, the recipient must sign for the notice. PSM §§ 161.41, 168.51. See also DMM § 508.1.1.7(b) (current version). If the signature on the delivery receipt is not legible, it must be legibly printed on the receipt. Ibid. If the Legislature wanted to require something less, it would have said so. The Legislature could have chosen to have a Chapter 91 request merely sent by regular mail. Due to its importance, a Chapter 91 request requires a signature, not merely an assertion of delivery by an anonymous mail carrier. Seeking a signature puts the recipient on notice of the importance of the request.

The Legislature reasserted the necessity of a signature when it expanded the definition of certified mail in 2015 to include private express carrier services providing a confirmation of mailing. L. 2015, c. 251, § 1; N.J.S.A. 1:1-2. The requirements of the confirmation of mailing mirror the information provided by the Postal Service. Namely, the confirmation of mailing "shall include, at a minimum confirmation of" fact of mail[ing], compare DMM § 503.3.2.1(d); time of mailing, compare DMM § 503.3.2.1(d); date and time of delivery, compare DMM § 503.3.1.1; attempted delivery, compare DMM § 503.3.1.1; signature, compare DMM § 508.1.1.7(b); or similar information for confirmation or proof associated with the delivery service, compare, e.g., DMM §§ 508.1.1.7(b) (legibly printed name of recipient), 503.6.1.1 (delivery address). L. 2015, c. 251, § 1; N.J.S.A. 1:1-2.

This court is not suggesting a recipient of certified mail can avoid the negative consequences of failing to respond by not signing for certified mail. This case is unlike Towne Oaks at South Bound Brook v. Borough of South Bound Brook, 326 N.J. Super. 99 (App. Div. 1999), where service of the request was valid when sent both regular mail and certified mail, and the certified mail was returned as unclaimed when no one signed for delivery despite repeated notices left by the Postal Service. Id. at 101. A taxpayer cannot thwart the process by failing to provide a signature. Ibid. In the case now before the court, there is no evidence taxpayer avoided signing for the request or was even asked to sign for the request. Rather, the evidence points to the Postal Service failing to comply with its regulatory mandate to provide certified mail service.

The cause of the problem is a third party, the Postal Service, failing to ensure delivery according to the certified mail standards. Chapter 91 dictates the use of certified mail to effectuate valid service. The taxpayer did not refuse to accept the certified mail. The municipality did not fail to send the notice by certified mail. When neither party is blameworthy, "deciding [the municipality's] motion requires a balancing of the impact on [taxpayer] of the granting of the motion against the impact on [the municipality] and the assessing process of the denial of the motion." J & J Realty, 22 N.J. Tax at 164. The balancing requires consideration of the case law's deference to allowing an appeal to fulfill taxpayer's right to appeal tax

assessments. Ibid. "When an assessor has failed to receive a response to a request for information, the impact on the [municipality] and the assessor resulting from denial of a Chapter 91 motion is of a far lesser magnitude than the impact . . . on a taxpayer's appeal rights resulting from the granting of the motion." Id. at 165. The failure of a third party, the Postal Service, to deliver the notice in accordance with the dictates of the Legislature cannot be shifted to the taxpayer. Without the signed return receipt or returned unclaimed Chapter 91 request, the solution is to resend the certified mail request. The municipality paid for certified mail service and unfortunately got something less. The failure to follow certified mail regulations should be raised with the local postmaster.[12]

A taxpayer surviving a Chapter 91 motion does not win anything but the right to contest an assessment in court. A challenge to an assessment could also benefit the municipality and other taxpayers. In most cases the court is free to increase as well as decrease the assessment. Campbell Soup Co. v. City of Camden, 16 N.J. Tax 219, 226-27 (Tax 1996). In other words, the court can peg the assessment at the correct amount. This comports with the overarching goal of Chapter 91 of obtaining information so accurate assessments can be reached.

---

[12] Technically, a refund would be due for the failure of the Postal Service to provide certified mail service. DMM § 604.9.2.3(e).

## V. CONCLUSION

For the foregoing reasons, the City's motion to dismiss is DENIED.